677 S.W.2d 142 (1984)
Gregory Don WASHINGTON, Appellant,
v.
The STATE of Texas, Appellee.
No. 05-83-00247-CR.
Court of Appeals of Texas, Dallas.
August 3, 1984.
*143 J. Stephen Cooper, Bruder & Cooper, Dallas, for appellant.
Henry Wade, Dist. Atty., Karen Chilton Beverly, Asst. Dist. Atty., Dallas, for appellee.
Before AKIN, VANCE and ROWE, JJ.
*144 AKIN, Justice.
We grant appellant's motion for rehearing and withdraw our former opinion. This appeal was from a conviction of aggravated robbery for which the appellant was assessed a sixty year sentence. The appellant contends that he was denied a speedy trial under the provisions of the TEX. CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1984) (the Speedy Trial Act), and that there is a fatal variance between the allegations made in the indictment and the proof offered by the State at trial. We cannot agree. Accordingly, we affirm.
In our prior opinion we held that appellant waived his speedy trial contention by failing to present his motion to dismiss prior to the seating of the jury. However, Noel v. State, No. 827-83, (Tex.Crim.App. March 14, 1984), which was delivered after our original opinion was released, apparently holds that a motion filed prior to an announcement of ready or prior to the commencement of testimony, and which motion was considered by the trial court, is not untimely filed. In this case, appellant filed his motion prior to the commencement of testimony, and it was considered and overruled by the trial court. Thus, we withdraw our prior opinion and hold that appellant has not waived his contentions under the Speedy Trial Act. We further hold that, for reasons stated below, appellant's rights under article 32A.02 were not violated.
Two hundred eighty-five days elapsed between appellant's arrest on April 21, 1982, and commencement of trial on February 1, 1983. Our question is whether certain periods of this time were tolled under the Speedy Trial Act. In this case, appellant was indicted four times for the same offense. All four indictments allege the same offense, the same manner and means of committing the offense, the same date of the offense, and the same complainant. These similarities show that each indictment re-indicted the appellant for the same offense. The first indictment contained no enhancement paragraph although the remaining three indictments did. The only difference between the last three indictments was that the second indictment alleged that the prior offense, used for enhancement purposes, was "Unlawfully carrying a weapon in a tavern" while the third and fourth indictments alleged the prior offense as "Unlawfully carrying a weapon in a tavern, a 3rd degree felony." [Emphasis added]. Several questions are presented concerning whether the State was ready for trial within 120 days. We hold that between December 7, 1982, when the fourth indictment for this offense was returned, and when trial commenced on February 1, 1983, the running of the Speedy Trial Act was tolled because the State announced on January 31, 1983, that it was ready and had been ready since the fourth indictment was filed. Thus, 56 days must be subtracted from the 285, leaving a total of 229 days. We also hold that the State's announcement of ready, on May 24, 1982, under the first indictment likewise tolled the running of the Act at least until the second indictment was filed on June 2, 1982. This accounts for an additional 9 days, thus leaving 220 days remaining.
We turn now to whether any of these remaining 200 days were tolled and thus not countable under the Act. At the pre-trial hearing on appellant's speedy trial motion, the State without objection introduced as State's exhibit 1A the docket sheet, filed in the record of the first indictment, which reflected all of the trial settings for the various indictments from the first setting through the trial of the fourth indictment. Appellant's attorney also requested that the jackets of the various causes be entered in the record. The State's attorney, without objection, directed the trial court's attention to State Exhibit 1A, which lists five passes by agreement of counsel, effective from May 27, 1982, to October 18, 1982. We note that the prosecutor read through the list of passes without objection or contravention by appellant, and that the trial judge who approved all the various passes also heard the speedy trial motion and presided over the trial on *145 the merits. Article 32A.02, section 4(3), provides:
Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:
(3) a period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel, except that a defendant without counsel is deemed not to have consented to a continuance unless the court advised him of his right to a speedy trial and of the effect of his consent.
The period of agreed continuance is, therefore, excludable, leaving only 82 days between arrest and trial which are to be considered for speedy trial purposes. Since the appellant was accused of a felony offense, the Speedy Trial Act directs that the State be ready for trial within 120 days "of the commencement of the criminal action." TEX.CODE CRIM.PROC.ANN. art. 32A.02 § 1(1) (Vernon Supp.1984). Because only 82 countable days elapsed, appellant's rights under the Act were not violated.
We turn next to the appellant's contention that a fatal variance exists between the indictment and the proof offered at trial. The indictment stated that the appellant caused serious bodily injury to the complainant by striking her with an "object the exact nature and description of which is unknown to the Grand Jurors." The appellant contends that because the evidence at trial showed the appellant caused the complainant serious bodily injury by striking her with a pistol, and that this information was available to the grand jury if they had made a reasonably diligent inquiry. We disagree.
When an indictment alleges that the manner and means utilized to inflict an injury is unknown, and the evidence at trial does not show what type of object was used, a prima facie showing exists that the object was unknown to the grand jury. Cunningham v. State, 484 S.W.2d 906, 911 (Tex.Crim.App.1972). If, however, evidence at trial shows what object was used to inflict the injury, an issue is raised with respect to whether the grand jury had information, when it handed down the indictment, as to the object used. Payne v. State, 487 S.W.2d 71, 72 (Tex.Crim.App. 1972). If it is shown that the grand jury did not know what type of object was used, the State must show that the grand jury had used reasonable diligence in seeking to ascertain this fact. Id. The State has the burden of proof on both the issue of whether the object was unknown to the Grand Jury and whether a reasonable diligence was utilized to ascertain its nature. (If the State fails to sustain its burden of proof on either of these issues, a fatal variance exists and the case must be reversed.) Thus, our first inquiry is whether the evidence introduced at trial established the nature of the object which was used to injure the complainant. Although the appellant's accomplice testified at trial, he had previously given a signed statement to the police, before appellant's indictment, in which he stated: "[t]he woman grabbed the pistol and [the appellant] struck her with the pistol." At trial, the accomplice was asked: "Was he hitting her with the pistol during this time?" The accomplice responded: "Well, I guess so, because she was real bloodied up." [Emphasis added]. This evidence shows that the appellant apparently caused serious bodily injury to the complainant by striking her with a pistol.
Since the evidence shows that the appellant struck the complainant with a pistol, our next inquiry is whether the grand jury was aware of this fact and whether the grand jury used reasonable diligence to ascertain the object used. The foreman of the grand jury which handed down this indictment testified. When asked what type of investigation was made by the grand jury to determine the nature of the object used, he responded: "There was questioning of the investigator. I believe his name was Reeves. And he was unable to determine what type of instrument or object was used. It was unknown. At least, that was his impression from having talked to the doctor who examined the injured party." The officer who testified *146 before the grand jury was apparently the same officer who had previously taken the accomplice's statement which described the appellant striking the complainant with a pistol. No other evidence as to the type of object which inflicted the injury was presented insofar as the grand jury was concerned. This evidence establishes that the type of object used to inflict the injury was unknown to the grand jury. Thus, our final question is whether the jury exercised reasonable diligence to determine the precise object used.
The appellant contends that the jury did not exercise reasonable diligence because the confession of the accomplice was in the possession of the State and because the grand jury failed to call a doctor to determine if there was medical evidence as to the object used. We fail to perceive the relevance of the fact that the investigator had knowledge of the accomplice's confession. That the investigator may have sought to conceal information or failed to remember the accomplice's statement does not necessarily mean that the grand jury was not reasonably diligent. In this respect, the grand jury asked the proper questions but failed to obtain the identity of the object used.
We turn now to appellant's contention that the grand jury did not exercise reasonable diligence because it failed to call a doctor to describe the complainant's injury. We again cannot agree. First, the investigator stated that he had spoken to a doctor and that, from the conversation, he concluded that object which inflicted the injury was unknown. Furthermore, the doctor, who examined the complainant, stated at trial that "it appeared that whatever she was struck with was some type of blunt instrument." Although he was not asked directly what type of instrument was used to inflict the injury, the doctor's testimony indicates that he was unable to specifically identify the instrument used. On the basis of these facts we hold that the grand jury used reasonable diligence to determine the precise instrument used to inflict the complainant's injuries.
The cases cited by the appellant are not persuasive with respect to this question. Jordan v. State, 520 S.W.2d 388 (Tex.Crim. App.1975), concerned a conviction for receiving and concealing stolen property. In that case the indictment stated that the person from whom the property was received was unknown to the grand jury. However, at trial numerous witnesses testified as to the source of the stolen property. The Jordan court concluded that there was no reasonably diligent inquiry by the grand jury to discover the source of the stolen property from the sources available to it. No evidence was adduced, however, in that case, as here, with respect to the grand jury's efforts to ascertain the source of the stolen property by proper questions.
In Jones v. State, 132 Tex. Crim. 216, 104 S.W.2d 42 (1937), which was a murder case, the District Attorney had a confession from the defendant detailing how she had committed the murder before he sought the indictment. A member of the grand jury testified that they had done their best to ascertain the manner and means before returning the indictment, which, of course, is but a conclusion. No other evidence is stated in Jones as to what specific inquiries were made by the grand jury. We conclude that the basis of the holding in Jones is that if the grand jury in Jones had made a reasonable inquiry by asking pertinent questions of the witnesses presented, they would have discovered the means by which the injury was inflicted. Jones is not controlling here because in this case the grand jury asked specific questions with respect to the object used to inflict the injury and could reasonably rely upon the answers to their questions. Certainly, no further investigation by the grand jury would have been dictated by reason. Indeed, it would be extraordinary and impractical for a grand jury to disbelieve all witnesses presented and to conduct an independent investigation. For us to so hold would place an impossible impediment upon our grand jury system as well as upon our criminal justice system. In this respect, we note that the sole purpose of *147 requiring the grand jury to name the weapon used to inflict injury is to place the defendant upon notice of what the State intends to prove at trial so that the defendant may fairly prepare his defense. We cannot say that where, as here, the grand jury has diligently questioned the witnesses with respect to the weapon used, the defendant has been in any manner harmed in preparing his defense.
Affirmed.