**Glen Robert SEMENTO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–87–00308–CR.

Court of Appeals of Texas, Dallas.

Feb. 3, 1988.

Scott M. Anderson, Dallas, for appellant.

Leslie McFarlane, Dallas, for appellee.

Before DEVANY, LAGARDE and THOMAS, JJ.

DEVANY, Justice.

Appellant, Glen Robert Semento, appeals his jury conviction of murder. The jury assessed punishment at life imprisonment. In three points of error, appellant complains that: (1) the evidence was insufficient; (2) there existed a fatal variance between the allegation and proof at trial; and (3) the evidence was insufficient to prove the intent of the appellant. Finding no merit in appellant's points of error, we affirm the conviction.

In his first point of error, appellant contends that the evidence was insufficient to sustain the conviction. The victim, William Lappine, was last seen alive by the manager of his apartment complex, Gloria Hawkins, on Saturday, March 22, 1986, at 2:00 p.m. On Monday, March 24, 1986, Ms. Hawkins received a telephone call from the victim's employer concerning his unexplained absence at work. Pursuant to that phone call, Ms. Hawkins noticed that appellant's truck was not in the parking lot. She went to the victim's apartment and did not notice any foul play. Out of concern, Ms. Hawkins called Douglas Brasch, a neighbor and friend of the victim, on Tuesday, March 25, 1986. Mr. Brasch, who had a key to the victim's apartment, checked the apartment at Ms. Hawkins' request. Once inside the apartment, Mr. Brasch checked the victim's bedroom and found him lying on the floor wrapped up in a pile of blankets.

Mr. Brasch was asked to identify State's Exhibits Nos. 13, 14 and 15. He identified a VCR, stereo, and speakers as belonging to the victim. He also testified that these items were not in the apartment at the time the body was found. Benjamin Armstrong, an investigator in the physical evidence and fingerprint section of the Dallas Police Department, arrived at the scene of the offense on Tuesday, March 25, 1986, at 8:25 a.m. Mr. Armstrong found the body wrapped in a sheet and plastic mattress cover. A red broken coffee cup was found on the floor by the bedroom wall under the bed. The coffee cup contained a liquid sticky residue. Blood was found on the wall and the door of the bedroom. The bathroom sink appeared to have been wiped dry. A partial palm print was found on the left side of the sink. The print was consistent with a person standing and facing the sink with his or her hand on the side of it. Blood was found on a towel in the bathroom. Mr. Armstrong was also able to get fingerprints off of a jar of instant coffee in the kitchen. The palm print and fingerprint found at the scene were identified as belonging to appellant.

Eddie Garcia, a resident of the same apartment complex as the victim, testified that he saw a young man sitting in the victim's truck on Monday, March 24, 1986, early in the morning. He described the person as having hair down to his collar and wearing a baseball cap. The cap looked like one that belonged to the victim. Mr. Garcia testified that there was nothing about appellant that was different from the person he saw in the victim's truck.

Dallas police officer, Rick Sapien, a homicide investigator assigned to this case, testified that the victim's family notified him about several pieces of property missing from the victim's apartment. The victim's brother ultimately provided the witness with serial numbers and descriptions of the various items that were missing. Officer Sapien then turned that information over to the pawn detail of the police department in order that a computer check on pawned items could be run on the serial numbers. On the following day, as a result of this check, appellant's name was provided by the pawn detail. On May 10, 1986, Officer Sapien began searching for appellant and also a woman by the name of Sherree Denise Porter. Appellant was found on May 14, 1986, in the Phoenix, Arizona jail.

Nancy Albright, a vice president at Pan American Bank, testified that the victim had a checking account at her bank. During the morning of Monday, March 24, 1986, someone came into the bank with a

check written on the victim's account. The bank teller who checked to verify the signature of the victim contacted Ms. Albright because the signature did not match. The person who presented the check offered a Florida driver's license as proof of his identification. Ms. Albright spoke with the person about the check for over eight minutes. Ms. Albright refused to cash the check.

Dr. M.G.F. Gilliland testified that she performed an autopsy on the victim in the course of her job with the Dallas County Medical Examiner's Office. She estimated the time of death as between noon Saturday, March 22, 1986, and noon Sunday the following day. The injuries to the wrist and forearm of the victim were described as defensive wounds, those that could be sustained while trying to protect oneself from injury. The injury to the head, which contained the red plastic fragment and which resulted in the scalp splitting, was caused by a blunt unidentifiable object. The injury was consistent with being caused by the broken red cup found at the victim's apartment.

The internal examination revealed bleeding in the neck muscles and the voice box of the victim. While these injuries could occur in several ways, it was Dr. Gilliland's testimony that the cause of death was by strangulation of the body with a fairly broad force, either with the crook of the elbow or the hands in such a fashion as to not leave marks on the surface of the skin. While the blow to the victim's head contributed to his death, the cause of death was strangulation.

Officer Sapien testified that on June 30, 1986, the victim's truck was found at the Circle Inn. Several items belonging to the victim were found in the truck, including the victim's checkbook. The officer found a set of car keys on the ground by the driver's door. The tag on the keys said "Chrysler, 4 door, green."

W.F. Higgins, a former employee of the Harris Jewelry and Loan pawn shop, testified that he received a Magnavox stereo on March 24, 1986, in a business transaction. He identified the stereo as State's Exhibit No. 14 and after examining the Bill of Sale,

Mr. Higgins determined that he had personally handled this sale. The Bill of Sale indicated that appellant sold the stereo to the witness. At the time of the sale, appellant presented a Florida driver's license showing his picture with the number S55329660261. Mr. Higgins identified appellant as the person involved in the sale.

Leland French, an employee at the Hines Boulevard Pawn Shop, testified that he made a loan for a Zenith black and white television on Monday March 24, 1986. Appellant brought in the television and offered his Florida driver's license as identification. Marvin Macioci, an employee of the National Pawn and Jewelry, testified that the VCR, State's Exhibit No. 73, contained the same serial number as his pawn ticket and State's Exhibit No. 64, a Magnavox VCR box. The name on the pawn ticket, taken from the driver's license, was appellant's name.

Former police officer, Anthony Wayne Britnell, testified that he arrested appellant in Phoenix, Arizona on May 2, 1986. Appellant was arrested with a woman by the name of Sherree Denise Porter. At the time of arrest, appellant was identified by a Florida Driver's license with the number S55329660261. That driver's license number matched that of State's Exhibits Nos. 43, 44, 74, and 82—the various pawn and sales tickets previously introduced at trial.

Dallas police officer, Donna Cameron, testified that she came in contact with Sherree Denise Porter on February 5, 1986, when Ms. Porter was driving a green 4-door 1974 Chrysler automobile.

Roger Smith testified that he was employed as a forensic document examiner and latent fingerprint examiner for the Institute of Forensic Science. Smith testified that he removed three checks, numbers 296 to 298, from the checkbook belonging to the victim. The checks were removed in order that Smith could run tests to determine if there was legible indented handwriting on the checks from the previously written check. Mr. Smith was able to lift prints of the indented writing from check number 295 left on check numbers 296 to 298. Mr. Smith testified that it was his

opinion that the indented writing found on the checks matched appellant's exemplars. He also testified that he was "one hundred percent sure" that the pawn tickets and Bill of Sale were signed by the appellant.

For purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative. *Hankins v. State*, 646 S.W.2d 191, 199 (Tex.Crim.App.1981) (on State's motion for rehearing). In reviewing a circumstantial evidence case, it is not necessary that each fact point directly and independently to the guilt of the accused but, rather, the cumulative force of all circumstances can support a finding of guilt. *O'Pry v. State*, 642 S.W.2d 748, 760 (Tex.Crim.App.1981) (on State's motion for rehearing). The test for reviewing the sufficiency of the evidence on appeal is set out by the Texas Court of Criminal Appeals as follows:

> The standard for reviewing the sufficiency of the evidence on appeal is the same for direct and circumstantial evidence cases; and that is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.

*Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984). Direct evidence is defined as that which directly demonstrates the ultimate fact to be proven, whereas circumstantial evidence is direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven. *Rodriguez v. State*, 617 S.W.2d 693, 694 (Tex.Crim.App.1981).

Appellant was not a known friend of the victim, although it is indisputable that appellant was in the victim's apartment. Appellant's palm print was found at a place on the bathroom sink which is consistent with a person standing at the sink and wiping it dry. Blood was found on a bathroom towel. Appellant's fingerprints were found on a jar of coffee in the victim's apartment. A broken coffee cup containing liquid residue was found in the room with the victim's body. The item found in the victim's head wound is consistent with being a piece of that cup. The cause of death was strangulation of some type. The victim's body showed defensive wounds and was wrapped in bed sheets. The evidence establishes that the murder occurred sometime over a weekend. On the first business day after the murder, before the body was found, appellant forged a check on the victim's bank account. On that same day he pawned four pieces of the victim's property. The victim's truck contained the victim's checkbook which appellant used when he tried to cash the forged check.

In a circumstantial evidence case, fingerprint evidence alone may be sufficient evidence of guilt under certain circumstances or may be sufficient corroboration of other evidence to support guilt. *Phelps v. State*, 594 S.W.2d 434, 436 (Tex. Crim.App.1980); *Jones v. State*, 582 S.W.2d 129, 133 (Tex.Crim.App.1979); *Washington v. State*, 721 S.W.2d 502, 503 (Tex.App.— Houston [14th Dist.] 1986, pet ref'd); *Clark v. State*, 707 S.W.2d 728, 730 (Tex. App.—Beaumont 1986, pet. ref'd); *Dean v. State*, 697 S.W.2d 683, 686 (Tex.App.—Dallas 1985, no pet.); *Anderson v. State*, 672 S.W.2d 14, 15–16 (Tex.App.—Houston [14th Dist.] 1984, no pet.). The location of the fingerprints and the logical inferences from the evidence of appellant's activities that occurred after the victim's death sufficiently support a finding of appellant's guilt.

Appellant asserts on appeal that the evidence does not exclude the possibility that someone else committed the murder. In evaluating such a theory, the Court of Criminal Appeals has set forth the following guidelines:

> It is not required that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a reasonable one consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence.

*Vaughn v. State*, 607 S.W.2d 914, 921 (Tex. Crim.App.1980). *See also Russell v. State*, 665 S.W.2d 771, 776 (Tex.Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428,

79 L.Ed.2d 752 (1984). The theory that a third person committed the murder is out of harmony with the evidence. Only appellant's fingerprints were found at the scene of the offense. Only one person was seen driving the victim's truck from the apartment complex. There is no evidence that anyone was with the appellant when he pawned the victim's personal property. The theory that another person was involved in this offense is not consistent with the evidence and, thus, does not amount to a reasonable doubt of appellant's guilt. In fact, the cumulative force of all of the evidence leads to appellant's guilt. Accordingly, we hold the evidence sufficient to support the jury's verdict of guilt. Appellant's first point of error is overruled.

■ In his second point of error, appellant contends that the trial court erred in holding the evidence to be sufficient to sustain the conviction because there was a variance between the allegation in the indictment and the proof at trial. The indictment in this case reads, in pertinent part, as follows:

> ... GLEN ROBERT SEMENTO ... did then and there knowingly and intentionally cause the death of WILLIAM LAPPINE, an individual, by striking said WILLIAM LAPPINE with a blunt instrument, the exact description of which is unknown to the Grand Jurors, and by strangling the said WILLIAM LAPPINE by manner and means unknown to the Grand Jurors ...

The medical examiner, by her testimony, eliminated the possibility that death occurred by striking the deceased with a blunt instrument and the court deleted this manner and means from the charge to the jury in this case. Specifically, appellant is complaining that the State failed to establish (1) that the Grand Jury did not know the manner and means of strangulation which caused the death of the victim, and (2) that the Grand Jury had made a diligent effort to discover the manner and means of strangulation.

The test for reviewing the sufficiency of the Grand Jury's allegation that the manner and means of infliction of an injury was unknown is as follows:

> When an indictment alleges that the manner and means utilized to inflict an injury is unknown, and the evidence at trial does not show what type of object was used, a prima facie showing exists that the object was unknown to the grand jury.

*Washington v. State*, 677 S.W.2d 142, 145 (Tex.App.—Dallas 1984, no pet.). At trial, the medical examiner testified as to two of the ways in which the victim's strangulation could have occurred. The medical examiner specifically stated that there are many other ways to apply force without damaging the surface of the skin and that she was demonstrating only two of the possibilities. Since the exact manner and means of the strangulation which caused the death of the victim was not established at trial, a prima facie showing was made that the Grand Jury did not know what caused the death of the victim. *Washington v. State*, 677 S.W.2d at 145. *See also Crocker v. State*, 573 S.W.2d 190, 203–204 (Tex.Crim.App.1978); *Brown v. State*, 704 S.W.2d 506, 508 (Tex.App.—Dallas 1986, pet. ref'd).

The State did introduce the testimony of Nancy Pollard, a member of the Grand Jury that indicted appellant in this case. She testified that, based on the evidence received from the medical examiner's report, the Grand Jury was unable to determine the manner and means of strangulation. The investigator who testified before the Grand Jury was asked specific questions about the manner and means of death, the results of objects found and tested from the scene of the offense, and the possible cause of death of the victim. While inquires were made as to other means of causing the death of the victim, the Grand Jury was unable to make a specific allegation. Thus, there is evidence that the Grand Jury did diligently attempt to discover the manner and means of strangulation. The manner and means of strangulation were not developed at trial by the evidence, and the evidence established that the manner and means was unknown. Accordingly, we hold that there was no vari-

ance between the allegation and the proof. Appellant's second point of error is overruled.

In his third point of error, appellant contends that the evidence is insufficient to prove the intent of the appellant in connection with the offense. Appellant contends that the medical examiner's testimony that occasionally police-choke-holds accidentally result in death raised the issue that the victim's death could have been accidental. However, the medical examiner could think of only two or three cases nationwide where this had actually occurred.

The intent of a defendant is a fact question that may always be ascertained or inferred from the means used to cause death and the wounds inflicted. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex.Crim. App.1974). Proof of a culpable mental state generally relies on circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App.1978). One's acts are generally reliable circumstantial evidence of his or her intent. *Phillips v. State*, 597 S.W.2d 929, 936 (Tex.Crim.App.1980). Furthermore, evidence of extraneous offenses is admissible to prove the culpable mental state. *Mallicote v. State*, 548 S.W.2d 42, 43 (Tex.Crim.App.1977).

The evidence in this case shows, in addition to the strangulation, defensive wounds to the victim and a blow to the head with a blunt object. Further, the victim was wrapped in a blanket, which is consistent with an attempt to conceal the body rather than having caused an accidental death. After the death occurred, the appellant attempted to forge the victim's checks and pawned the victim's personal property. We hold that this evidence is sufficient to show that appellant intended to strangle the victim. Appellant's third point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.