NUMBER 13-03-122-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

DEBRA FIRO,                                                                   Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.
___________________________________________________________________

On appeal from the 117th District Court
of Nueces County, Texas.
__________________________________________________________________

MEMORANDUM OPINION

Before Justices Yañez, Rodriguez, and Garza
Opinion by Justice Rodriguez

         Appellant, Debra Firo, was tried before a jury and convicted of murder. The jury
assessed a punishment of ninety-nine years imprisonment in the Institutional Division
of the Texas Department of Criminal Justice. By one issue, appellant contends the
evidence was factually insufficient to support a finding of guilt. The trial court has
certified that this case “is not a plea-bargain case, and the defendant has the right of
appeal.” See Tex. R. App. P. 25.2(a)(2). We affirm.
I. FACTS
         As this is a memorandum opinion and the parties are familiar with the facts, we
will not recite them here except as necessary to advise the parties of the Court's
decision and the basic reasons for it. See Tex. R. App. P. 47.4.
II. FACTUAL SUFFICIENCY
         In her sole issue, appellant contends the evidence is factually insufficient to
support a finding that she caused the death of Roxanne Hernandez.
A. Standard of Review
         In evaluating the factual sufficiency of the evidence, this Court must complete
a neutral review of all the evidence. Vasquez v. State, 67 S.W.3d 229, 236 (Tex.
Crim. App. 2002); King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App. 2000). 
Weighing all the evidence, we must then determine whether the proof of guilt is so
obviously weak as to undermine confidence in the jury’s determination or whether the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof. King, 29 S.W.3d at 563; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). However, we are not free to re-weigh the evidence and set aside a jury verdict
merely because we feel a different result is more reasonable. See King, 29 S.W.3d at
563. Only when this Court determines that the verdict is against the great weight of
the evidence presented at trial so as to be clearly wrong and unjust can we set aside
a verdict for factual insufficiency. Johnson, 23 S.W.3d at 7. A clearly wrong and
unjust verdict is “manifestly unjust,” “shocks the conscience,” or “clearly
demonstrates bias.” Rojas v. State, 986 S.W.2d 241, 247 (Tex. Crim. App. 1998);
Santellan v. State, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997). 
         Under Malik v. State, we determine the legal sufficiency of the evidence against
a “hypothetically correct charge.” Adi v. State, 94 S.W.3d 124, 130 (Tex.
App.–Corpus Christi 2002, pet. ref’d) (citing Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997)). Such a charge accurately sets out the law, is authorized by
the indictment, does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately describes the
particular offense for which the defendant is being tried. Id. We also apply Malik to
factual sufficiency reviews. Id. at 131. 
B. Elements of the Offense
         To prove murder under the theories alleged in the indictment, the State was
required to prove appellant either (1) intentionally or knowingly caused the death of
Roxanne Hernandez, or (2) intended to cause serious bodily injury to Roxanne
Hernandez and committed an act clearly dangerous to human life that caused her
death. Tex. Pen. Code Ann. § 19.02(b)(1)-(2) (Vernon 2003). A person acts
intentionally when it is her conscious objective or desire to engage in the conduct or
cause the result. Id. § 6.03(a). Further, a person acts knowingly with respect to the
result of her conduct when she is aware that her conduct is reasonably certain to
cause the result. Id. § 6.03(b).
         To determine culpability, the jury is entitled to consider events that occurred
before, during, and after the commission of the offense. Davila v. State, 952 S.W.2d
872, 875 (Tex. App.–Corpus Christi 1997, pet. ref’d); Henderson v. State, 825
S.W.2d 746, 749 (Tex. App.–Houston [14th Dist.] 1992, pet. ref’d). Intent may be
inferred from the words, actions and conduct of appellant. Robertson v. State, 871
S.W.2d 701, 705 (Tex. Crim. App. 1993). The means used to cause the death may
also be considered in determining intent. Semento v. State, 747 S.W.2d 415, 420
(Tex. App.–Dallas 1988, pet. ref’d). If a deadly weapon, such as a firearm, is used
in a deadly manner, the inference is almost conclusive that the defendant intended to
kill. Davila, 952 S.W.2d at 875. 
C. The Charge
         The trial court’s charge submitted the allegations of the indictment’s paragraphs
to the jury in the disjunctive, accurately setting out the law that was authorized by the
indictment as would a hypothetically correct charge. See Malik, 953 S.W.2d at 240. 
The jury returned a general verdict finding appellant guilty of the offense of murder as
alleged in the indictment. When a general verdict is returned and the evidence is
sufficient to support a finding of guilt under any of the paragraph allegations
submitted, the verdict will be upheld. Fuller v. State, 827 S.W.2d 919, 931 (Tex.
Crim. App. 1992).
D. Analysis
         Appellant contends a finding that she intentionally or knowingly killed
Hernandez, or intentionally or knowingly caused her serious bodily harm, yields a result
that is clearly wrong and unjust. The record shows that appellant and Hernandez had
been living together for approximately three years. At trial, there was witness
testimony that the two had been arguing the day prior to the shooting. In the early
morning hours of March 23, 2002, Hernandez suffered a single gunshot wound to the
chest and died. Appellant was alone with Hernandez in their house at the time
Hernandez was shot. 
         Throughout the police investigation that followed, appellant gave repeated false
statements and conflicting versions of the events surrounding Hernandez’s death. 
Although appellant first claimed that two men had come into the house and killed
Hernandez, she later admitted lying about the presence of the two men and told police
officers that Hernandez shot herself while appellant was in another room. See
Kemmerer v. State, 113 S.W.3d 513, 516 (Tex. App.–Houston [1st Dist.] 2003, no
pet.) (holding evidence factually sufficient to support murder conviction in part because
jury could have viewed the defendant’s changing versions of the incident as evidence
of guilt); Loserth v. State, 985 S.W.2d 536, 541-42 (Tex. App.–San Antonio 1998,
pet. ref’d) (holding evidence factually sufficient to support murder conviction based in
part on evidence that defendant initially lied to the police as to his whereabouts on the
night of the murder). Appellant later gave police yet another version of the events,
stating that she was in fact in the same room as Hernandez and the two struggled
over the gun just prior to the shooting. 
         Similarly, appellant gave conflicting statements to the police regarding the
location of the murder weapon and her actions after the shooting. The record shows
police found the gun that caused Hernandez’s death under a bunk bed mattress in the
bedroom of appellant’s house. Appellant initially told the police that after Hernandez
shot herself, she picked up the gun and threw it out the front door into the yard. In
a later statement, appellant stated she did not remember putting the gun under the bed
mattress and thought she had thrown the gun outside. However, at trial, appellant
testified that she put the gun in another room but then went back and “hid it in
another place.” See Castillo v. State, 71 S.W.3d 812, 818 (Tex. App.–Amarillo 2002,
pet. ref’d) (holding evidence sufficient to support murder conviction based in part on
evidence that defendant hid the murder weapons after the shooting and later threw
them into the lake). 
         Other evidence supporting the guilty verdict includes testimony given by Michael
Martinez, a forensic scientist, that gunshot residue was found on the right and left cuff
sleeve, front pocket and armpit areas of appellant’s sweatshirt. This testimony,
combined with the testimony of Detective Stimmler that appellant sat on her couch
after the shooting rubbing her hands under her armpits, provides evidence that
appellant was attempting to remove gunshot residue from her hands. 
         In light of this evidence, we cannot say a finding that appellant intentionally or
knowingly killed Hernandez, or intentionally or knowingly caused her serious bodily
harm, is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust. See Johnson, 23 S.W.3d at 7.
         Appellant also contends that the evidence is factually insufficient to sustain a
finding of guilt because it shows Hernandez’s death was the result of suicide. In
support of this contention, appellant directs this Court to specific evidence presented
at trial. Appellant references her first written statement to the police in which she
stated that she had pulled up the shirt of Hernandez in order to determine what had
happened to her. Appellant also points to testimony of Ezequiel Rodriguez that
Hernandez had a history of suicide attempts and suffered from depression. Defense
expert, Dr. Traci Lee Jordan, testified that depression and suicide are closely related
and that if a person has made a suicide attempt in the past, it greatly increases the risk
of that person actually committing suicide. Dr. Lloyd White, a forensic pathologist,
testified that Hernandez’s wound was consistent with suicide, although he was unable
to decide with a reasonable degree of medical certainty whether the death was a
homicide or suicide. Appellant also points to testimony by a police officer that she
was heard saying “[g]et up, get up,” to Hernandez as she lay lifeless on the floor. 
         Contrary to the evidence referenced by appellant is the testimony given by three
witnesses that Hernandez was neither depressed nor suicidal in the days prior to her
death; that Hernandez was happy and excited because her son was being released
from the Texas Youth Commission and was going to live with her; and that she had
a garage apartment built at her house for him. Hernandez had also made plans to eat
out with a friend the next day and then take her son shopping for new clothes. All of
this evidence supports a finding that Hernandez did not commit suicide.
         Considering all of the evidence and giving proper deference to the verdict, we
conclude that the verdict is not so obviously weak or greatly outweighed by contrary
proof as to indicate that a manifest injustice has occurred. See King, 29 S.W.3d at
563; Rojas, 986 S.W.2d at 247. Therefore, appellant’s sole issue is overruled.
III. CONCLUSION
         The judgment of the trial court is affirmed.

                                                                                                
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Opinion delivered and filed
this 19th day of February, 2004.