Harold Wayne SILLS, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–91–00360–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 17, 1992.

Discretionary Review Refused
March 3, 1993.

**393**

Harry Fleming, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

Appellant entered a plea of not guilty before the jury to the charge of murder. TEX.PENAL CODE ANN. § 19.02. He was convicted and the court assessed punishment, enhanced under TEX.PENAL CODE ANN. § 12.42(c), at imprisonment for 45 years. We reverse and remand.

In his first point of error, appellant contends the trial court erred by allowing the prosecutor to use a witness's written statement given to the police to impeach that witness, who repeatedly refused to give any testimony concerning the events leading up to the shooting of Steven Floyd Hays, the deceased complainant.

In his second and third points of error, appellant contends the trial court erred because the prosecutor was permitted to ask leading questions of a witness who refused to testify, and because the trial court's limiting instructions to the jury regarding a witness's testimony were inadequate.

In his fourth point of error, appellant asserts the evidence is insufficient to support appellant's conviction. We will address this point of error first.

On June 22, 1990, Harold Sills shot Steven Floyd Hays. Hays died several days later from the gunshot wound.

Appellant was charged with murder in two alternative paragraphs. The first paragraph alleged appellant intentionally or knowingly caused the death of Hays by shooting him with a firearm. The second paragraph alleged appellant intended to cause serious bodily injury to Hays and caused his death by intentionally or knowingly shooting him with a firearm, an act clearly dangerous to human life. The trial court instructed the jury to convict appellant if it found he committed murder in either of these two ways. The jury convicted appellant of murder as charged in the indictment.

Appellant argues the evidence is insufficient to prove he intentionally or knowingly committed murder. In reviewing the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. A person acts knowingly, or with knowledge, when he is aware of the nature of his conduct or of the circumstances surrounding his conduct. A person also acts knowingly, or with knowledge,

when he is aware that his conduct is reasonably certain to cause the result. TEX.PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974).

To determine culpability the jury is entitled to consider events that occurred before, during, and after the commission of the offense. *Henderson v. State*, 825 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

Lynne Farmer, the common law wife of Hays, testified substantially as follows:

Hays owed appellant $100.00 for a dope deal. Farmer accompanied Hays to appellant's trailer home so Hays could pay the debt. She remained in the car while Hays walked toward the trailer. When Hays got to the door of the trailer, he was knocked back. Appellant then came out of the trailer and kicked at Hays. Hays returned to the car. Appellant came to Hays and asked for his money. Hays gave appellant $100.00. Appellant told Hays that he had heard Hays had been running his mouth. Appellant and Hays went inside the trailer. Farmer remained in the car. She heard some banging around, "like they had been fighting." After a short time, things got quiet. She then heard banging around again and heard Hays cry. She then heard a gunshot. After the gunshot she heard more moving around. Someone came out of the trailer and told her Hays wasn't hurt, that he was just banged up. Several people began coming out of the trailer. Eventually, several people brought Hays out to the car and put him in the back seat. Appellant told Farmer he wasn't mad at her but the "sorry son-of-a-bitch deserves to die. I should have killed him when I had the chance." Farmer told appellant she was scared and he told her she had good reason to be scared.

In his written confession, appellant told police he wanted Hays to stop telling people that appellant was ripping off a man named Dennis Chambers. Appellant said he picked up a .25 automatic gun from the coffee table to frighten Hays. Appellant also said "I shot the gun above Steve's head and Steve acted like he went into shock." At trial, appellant told the jury he was angry and picked up the gun so no one else would get it, turned, and the gun went off. Appellant testified he did not know why the gun went off and he did not intend to kill Hays.

■ The trier of fact is the exclusive judge of the facts, credibility of witnesses and weight to be afforded their testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). The jury is free to accept one version of the facts, reject another, or reject all or any of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. 1981). Simply because the defendant presents a different version of the facts does not render the State's evidence insufficient. *Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986).

■ Hays owed appellant $100 for a drug deal. Appellant was angry at Hays for remarks he had made. In his written statement to the police appellant said he picked up the gun to scare Hays. Immediately after the shooting, appellant said he should have killed Hays. Appellant was charged with shooting the deceased with a deadly weapon, a firearm. Specific intent to kill may be inferred from the use of a deadly weapon per se. *Moreno v. State*, 755 S.W.2d 866, 868 (Tex.Crim.App.1988). A firearm is a deadly weapon per se. TEX.PENAL CODE ANN. § 1.05. Appellant's acts, words and deeds may also infer intent. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App.1982).

Viewing the evidence in the light most favorable to the verdict, we find that a rational jury could have found appellant intentionally or knowingly killed Steven Hays. We overrule appellant's fourth point of error.

■ In his first point of error, appellant asserts the trial court erred by permitting the prosecutor to use a witness's written statement given to the police to impeach that witness, who repeatedly refused to

give any testimony concerning the events leading up to the shooting of Hays. We agree and reverse and remand.

On June 22, 1990, Dennis Chambers witnessed the shooting of Hays by appellant. On June 27, 1990, Chambers gave police a written statement regarding the shooting. The major portions of that statement are as follows:

On Friday, June 22, 1990, at about 9:30 p.m., I went to Harold Sills' trailer. I know Harold Sills as Horrible Harold.... When I got there Harold was there and a biker they called "Snuffy" and a guy named "Bo" and Bobby Bolton. There were also two old gals there, one of them was Harold's old lady and the other was a girl that I don't know, but I think she was with Bobby Bolton. As soon as I stepped in the trailer, Harold stuck a .25 or .22 pistol in my face and said "What's this ... about you wanting to kill me?" and I told him "that isn't what I said." Harold said "I ought to kill you right here" and Bobby Bolton, who I also know as BoBo, was standing beside me and he said "no Harold, I know how to take care of this" and at that time the other guy called Bo ran out of the trailer. BoBo and Harold drug me over to the couch and BoBo started hitting me with his fists. He beat on me for about ten minutes.

\*    \*    \*    \*    \*    \*

Harold left after BoBo had been beating on me because Steve Hays, Lynne and Big Jerry had driven up. Lynne stayed in the car and Steve came in the door. Harold was behind Steve and Big Jerry was behind him. They all got in the trailer and came into the livingroom.... Harold had Steve go sit in a chair and BoBo got up off of me.... After that, BoBo went over and slapped Steve in the face. Harold was still standing in front of Steve and BoBo asked Steve about the money that he owed Harold for dope. Harold said that Steve had already paid him and then Harold asked Steve if he had told me that Harold had ripped me off. Steve said "Bull ..." and I spoke up and said "yeah, you did" and BoBo

turned and came back over to hit me in the face again and I seen Harold hit Steve in the side of the head with the hand that he had the gun in. I was sitting across the livingroom of the trailer and I could see out of the corner of my eye what was going on with Steve. After I seen Harold hit Steve in the head with the gun, Bobo hit me in the face and at the same time, I heard a gun go off. After that, Bobo got up and he walked over to check on Steve and I seen that Harold still had the gun in his hand. Harold said "I killed this one, I may as well take the other three to the river," referring to Lynn, Big Jerry and myself. BoBo said "wait a minute" and he continued checking on Steve. BoBo looked at the top of Steve's head and he said that his head was just knicked.

\*    \*    \*    \*    \*    \*

Snuffy came out of the bedroom ... and he kept Steve sitting in the chair. I was sitting on the couch and Big Jerry was in the kitchen like he was in a state of shock and Harold and BoBo ... kept telling us that if we talked or if anything was filed on them, that they would kill us and our families and Harold kept saying that he should go ahead and take us to the river. I kept telling Harold that Steve was okay, that he was just in shock and BoBo kept saying "yeah, he's okay" and finally after about five minutes, Harold told us to load Steve up.... Harold still had the gun, so he was running the show.

\*    \*    \*    \*    \*    \*

I kept trying to convince Harold that Steve was going to be okay, because I knew that if Harold knew that Steve was dead or dying, that he would kill all of us to keep from having any witnesses. We took Steve out to the car that he came up in and we put him in the back seat. As soon as we had him loaded in the car, I got in my car and I took off and didn't look back. Since that time I have been laying low and I found yesterday, through my brother, that Steve had died.

Chambers, called as a witness for the State, testified to his name and that he was

residing in jail on charges not related to this case. He refused to answer any other questions.

The trial court questioned Chambers outside the jury's presence. Chambers persisted in his refusal to answer the prosecutor's questions even under threat of contempt. He did not claim the Fifth Amendment privilege. The prosecutor informed the court that Chambers refused to testify because someone had threatened Chambers that if he testified his mother would die. Chambers refused to confirm or deny this report. The trial court recalled the jury to the court room.

The prosecutor then questioned Chambers by reading each sentence from the written statement. The prosecutor prefaced the reading of each sentence by asking Chambers "isn't it true you told police," "isn't it true your statement reads," or "isn't it true you further stated." The prosecutor read aloud all of Chambers's statement. The witness refused to agree or disagree with any of the statements. Chambers's answers were consistently, "I refuse to answer." On cross-examination, Chambers was asked if he thought the shooting was accidental or on purpose. The State objected on grounds of speculation. The court asked Chambers if he was planning to answer the question. Chambers responded that he did not believe appellant did it on purpose. There were no further objections by the State nor did the State attempt to impeach Chambers because of this answer. The State did not ask Chambers any further questions after defense counsel completed his cross-examination.

The State argues the prosecutor used Chambers's statement to impeach him. A frequently used means of impeaching a witness is by proof of a prior inconsistent statement, oral or written, under oath or not. *Miranda v. State*, 813 S.W.2d 724, 735 (Tex.App.—San Antonio 1991, pet. ref'd). There has always been a danger that a party may attempt to use a prior inconsistent statement under the guise of impeachment for the primary purpose of placing before the jury evidence that is not otherwise admissible and which may be treated as substantive evidence. *Id.* at 735.

In *Gannaway v. State*, 823 S.W.2d 675 (Tex.App.—Dallas 1991, pet. ref'd), Terre Rice, in a statement to police, said Gannaway admitted shooting the victim. Rice had heard Gannaway describe the murder and she included the details of the murder in her statement. At trial, Rice refused to testify about certain matters. She answered some preliminary questions and admitted she gave a statement to police. She invoked her fifth amendment rights and the State offered her testimonial immunity. *Id.* at 677.

The court held a hearing outside the presence of the jury. Rice agreed some of the facts in her statement were true and some of the facts were false. She repeatedly refused to answer certain questions about the murder. The court instructed the prosecutor to ask Rice about her statement in summary form. The prosecutor read Rice's statement by first prefacing the statement with the question "Is this true" and ended the reading of Rice's statement by asking "Is that true or not true, the statement you gave the Richardson Police Department?" Rice responded "I can't answer that question." The court held her in contempt and instructed the bailiff to remove her from the court room. *Id.*

The court recalled the jury. The State read Rice's testimony to the jury as a summary-form question. The trial court allowed the State to introduce Rice's police statement implicating Gannaway in the murder although Rice did not say the statement was wholly true, did not fully testify, and was not cross-examined about the statement. *Id.* The Dallas Court of Appeals, in reversing and remanding, said "Admitting Rice's statement was a 'backdoor' way for the State to get facts into evidence which Rice refused to testify about at trial." *Id.* at 678. The facts in *Gannaway* are strikingly similar to the facts in the present case and we reach the same result. The trial court erred in allowing the prosecutor to use Chambers's police

statement after he repeatedly refused to testify.

■ The State also argues that the prosecutor should have been allowed to introduce Chambers's statement as a statement against interest rather than being forced to use the statement only as impeachment evidence. The State did not offer Chambers's statement as a statement against interest at the trial court and raises this argument for the first time on appeal.

A statement against interest must be against the declarant's pecuniary or proprietary interest; or subject him to civil or criminal liability; or render invalid a claim by him against another; or make the declarant an object of hatred, ridicule, or disgrace, at the time of its making such that a reasonable man in his position would not have made the statement unless he believed it to be true. TEX.R.CRIM.EVID. 803(24).

■ The State argues Chambers's statement subjected him to appellant's hatred and retaliation. Logically, it can be argued that any statement made by a declarant against another will subject the declarant to hatred and retaliation by the person or persons the statement implicates. The State does not refer us to any case law that supports this type of broad argument. To be admissible, a statement against interest that makes the declarant the object of hatred, ridicule, or disgrace must be in the context of the declarant's social interests, such as a confession by a small-town minister of homosexual conduct, *Purtell v. State*, 761 S.W.2d 360, 369 (Tex.Crim.App. 1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989), or a statement by a husband that he was responsible for an automobile accident whereby his wife became a paraplegic. *Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986). If the State's broad argument was accepted then virtually every statement a declarant made against another would be admissible. We do not find Chambers was subject to hatred, ridicule, or disgrace at the time of making the statement such that his statement was against his interest.

■ Once the appellate court has determined there is error in the proceedings below, the judgment shall be reversed unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2). The reviewing court must also examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. *Harris v. State* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). The court must also focus on whether the error might possibly have prejudiced the jurors' decision-making. In essence, the reviewing court must examine whether the trial was an essentially fair one. It is the effect of the error that must dictate the reviewing court's judgment. *Id.* at 587–588.

■ The State argues that if the trial court erred, appellant was not harmed because of the instructions the court gave to the jury. The trial court's instructions were as follows:

... the prosecutor, will be asking questions of Mr. Chambers. If Mr. Chambers continues his responses as earlier before you then he will in all probability be refusing to answer as to the questions propounded by the prosecutor. The prosecutor's questions might contain what appear to be evidence but you have to understand please keep it in mind that the prosecutor's questions and contents thereof are not evidence. Unless the witness were to either confirm or deny then give you a basis for forming something that would be called evidence for you to consider. And the same applies to just generally as I said in opening statement that what the lawyers say is not evidence, what the lawyers ask in questions unless corroborated or accepted by the witness are not evidence. So please keep all these matters in mind as you consider ultimately what your verdict would be in this particular case and how to treat matters that are evidence before you....

Under these facts, we do not believe the instructions cured the error. Chambers was the only eye-witness to the actual

shooting who testified. His statement was based on what he saw and heard inside appellant's trailer. His statement was read point by point to the jury. The State argues that the incriminating aspects of Chambers's statement were established by other evidence. We do not agree. Only one other witness, Lynne Farmer, who was present that night testified. Farmer testified about what happened before Hays entered the trailer and about what happened after Hays was placed into the automobile, after he had been shot. Chambers was the only witness called to testify about what happened once Hays entered appellant's home.

We can not conclude beyond a reasonable doubt that Chambers's inadmissible statement did not contribute to appellant's conviction. We therefore, sustain appellant's first point of error. Because this point of error is dispositive of the appeal, we do not reach the merits of points of error two and three.

We reverse the trial court's judgment. We remand the cause to the trial court for further proceedings consistent with this opinion.