**Julio DAVILA, a/k/a Julio Yzaguirre Davila, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–95–319–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 21, 1997.

Rehearing Overruled Sept. 25, 1997.

J. R. "Bobby" Flores, Joseph A. Connors, III, McAllen, for Appellant.

Theodore C. Hake, Asst. Criminal District Attorney, Rene Guerra, District & County Attorney, Anibal J. Alaniz, Assistant District Attorney, Edinburg, for State.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., and YANEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found Julio Davila, a/k/a Julio Yzaguirre Davila, guilty of murdering Adriana Ochoa on June 10, 1990,[1] and the trial court sentenced him to fifty years' confinement. By five points of error, appellant contends that the evidence is insufficient to support the conviction and that the trial court erred by (1) not granting a mistrial during the prosecutor's closing argument, (2) denying his requested instruction for the lesser-included offense of criminal negligent homicide, (3) denying his requested instruction for the lesser-included offense of voluntary manslaughter, and (4) refusing to instruct the jury on the voluntariness of his actions. We affirm.

*Sufficiency of the Evidence*

By his fifth point of error, appellant complains that the evidence was insufficient to support his conviction. Specifically, appellant contends that the evidence is insufficient to show that he intentionally or knowingly caused the death of Adriana Ochoa. In the alternative, appellant argues that the evidence is insufficient to prove that he intentionally or knowingly committed an act clearly dangerous to human life.

A person acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 1994).[2] A person acts knowingly, or with knowledge, when he is aware of the nature of his conduct or of the circumstances surrounding his conduct. TEX. PENAL CODE ANN. § 6.03(b) (Vernon 1994). A person also acts knowingly, or with knowledge, when he is aware that his conduct is reasonably certain to cause the result. *Id.*

When we review a legal sufficiency of the evidence point of error, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Patrick v. State,* 906 S.W.2d 481, 486 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996); *Turro v. State,* 867 S.W.2d 43, 46–47 (Tex. Crim.App.1993); *Arceneaux v. State,* 803 S.W.2d 267, 269 (Tex.Crim.App.1990). The standard is the same for both direct and circumstantial evidence cases. *Earhart v. State,* 823 S.W.2d 607, 616 (Tex.Crim.App. 1991), *cert. denied,* 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994); *Sutherlin v. State,* 682 S.W.2d 546, 548–49 (Tex.Crim.App. 1984); *Vela v. State,* 771 S.W.2d 659, 660 (Tex.App.—Corpus Christi 1989, pet. ref'd). We measure the sufficiency of the evidence against the indictment as incorporated into the jury charge. *Jones v. State,* 815 S.W.2d

---

1. Act of May 28, 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1123, 1123 (amended 1993) (current version at TEX. PENAL CODE ANN. § 19.02 (Vernon 1994)).

2. Subsequent amendments to § 6.03 did not substantially alter the provision in effect at the time of the murder.

667, 670–71 (Tex.Crim.App.1991); *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App. 1982) (opinion on reh'g), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

The jury charge, incorporating the indictment, authorized the jury to find appellant guilty of murder if it found beyond a reasonable doubt that appellant either (1) intentionally or knowingly caused Ochoa's death by shooting her with a firearm, or (2) intentionally or knowingly committed an act clearly dangerous to human life by shooting her with a firearm and causing her death. The jury's verdict did not specify on which of these grounds appellant was found guilty.

■ To determine culpability the jury is entitled to consider events that occurred before, during, and after the commission of the offense. *Henderson v. State,* 825 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). Appellant's acts, words and deeds may also infer intent. *Hernandez v. State,* 819 S.W.2d 806, 809–10 (Tex.Crim.App. 1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982); *Sills v. State,* 846 S.W.2d 392, 394 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd).

■ Intent to kill may be inferred from the use of a deadly weapon *per se. Adanandus v. State,* 866 S.W.2d 210, 215 (Tex.Crim. App.1993), *cert. denied,* 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Moreno v. State,* 755 S.W.2d 866, 868 (Tex.Crim.App. 1988). Further, "[i]f a deadly weapon is used in a deadly manner, the inference is almost conclusive that [the defendant] intended to kill[.]" *Adanandus,* 866 S.W.2d at 215 (citing *Godsey v. State,* 719 S.W.2d 578, 581 (Tex.Crim.App.1986)). A firearm is a deadly weapon *per se.* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon 1994).[3]

The trier of fact is the exclusive judge of the facts, credibility of witnesses and weight to be afforded their testimony. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.

Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Sills,* 846 S.W.2d at 394. The jury is free to accept one version of the facts, reject another, or reject all or any of a witness's testimony. *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981); *Sills,* 846 S.W.2d at 394. Simply because the defendant presents a different version of the facts does not render the State's evidence insufficient. *Anderson v. State,* 701 S.W.2d 868, 872 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986); *Sills,* 846 S.W.2d at 394.

■ When a general verdict is returned and the evidence is sufficient to support a finding of guilt under any of the paragraph allegations submitted, the verdict will be upheld. *Fuller v. State,* 827 S.W.2d 919, 931 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). The State need only have sufficiently proven one of the paragraph allegations to support the verdict of guilty. *Id.* Thus, we review the record for evidence to support a guilty verdict on either of the paragraphs submitted to the jury. *Id.*

The record shows that on evening of June 10, 1990, Maria Concepcion Cantu, appellant's girlfriend, gave Adriana Ochoa a ride to the Last Pocket Lounge in Hidalgo County. Ochoa, the front passenger, held Cantu's eighteen-month-old son during the drive to the lounge. In the back seat were Cantu's four-year-old son and Ochoa's nine-year-old daughter. Ochoa was to deliver quarters to the bar at the request of her boyfriend, lounge owner Nick Canales. Appellant had previously ordered Cantu to stay away from Ochoa and the lounge.

Upon arriving at the lounge, Ochoa handed the child to Cantu and went into the bar. Shortly thereafter, Cantu noticed appellant's car pull into the parking lot, and appellant approach her car. Cantu ordered the children to lock the doors and keep the windows up. Appellant knocked on the driver's side window several times, demanding that Cantu

---

**3.** Amendments subsequent to the occurrence of the offense at issue made no substantive changes in the relevant provision.

open the door or the window so they could talk. Cantu told him they could talk with the windows up. Exiting the lounge several minutes later, Ochoa saw appellant and ran to the car. Appellant hurriedly moved around the car to the passenger side, attempting unsuccessfully to grab the door before Ochoa locked it. Appellant then moved to the back passenger side of the car to a place where he was approximately seven to eight feet from Ochoa. At this point Cantu and Ochoa saw appellant open his shirt and remove a gun from the waistband of his pants. Still holding her son, Cantu ordered the children down, started the car, and began to back toward appellant, which was the only way she could get out of her parking place.

Appellant released the safety by cocking the gun, gripped the handle to release a second safety, aimed at the car, and fired, striking the front passenger fender and tire. Cantu continued to drive the car in reverse, and appellant aimed a second shot at the car. The bullet struck the back passenger window approximately in the center, causing the glass to shatter onto the children in the back seat. The bullet also struck Ochoa in the neck. Finally managing to leave the parking lot, Cantu sped away from the lounge, but appellant followed her. Realizing that she was going in an unfamiliar direction, Cantu turned around and again appellant followed. Upon turning, Ochoa fell to the side, and Cantu discerned that Ochoa had been shot. Cantu went back to the lounge for help. Appellant did not follow her at this point. Instead, appellant went to his house, wrapped the gun in newspaper and had his son take the weapon to a neighbor from whom it was later recovered. Ochoa subsequently died from her gunshot wound.

■ The record reflects that appellant was familiar with firearms, knew the gun was loaded, knew there were people in the car, including small children, and intended to fire at the car twice, in spite of this knowledge. Appellant admitted that such actions were clearly dangerous to human life. The record reflects that appellant believed Ochoa was a bad influence on Cantu and that Ochoa was attempting to convince Cantu to work at the lounge. Appellant had ordered Cantu not to

give Ochoa any rides. There was also some evidence that several weeks prior to the shooting, appellant had threatened to kill Ochoa, her brother, and Canales if they did not leave Cantu alone. Appellant testified that when he saw Cantu at the lounge on the night of the shooting, he was angry and jealous.

In light of the above evidence, we conclude that any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. We hold that the evidence is legally sufficient to support appellant's conviction. Appellant's fifth point of error is overruled.

### Jury Instructions

By his second point of error appellant contends that the trial court erred in denying his requested instruction for the lesser-included offense of voluntary manslaughter.

■ An accused is entitled to a charge on a lesser-included offense if the lesser offense is included within the proof necessary to establish the offense charged and there is some evidence in the record that would permit a jury to rationally find that, if appellant is guilty, he is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Nance v. State*, 807 S.W.2d 855, 860 (Tex. App.—Corpus Christi 1991, pet. ref'd). This is true regardless of whether such evidence is strong or weak or unimpeached or contradicted. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex.Crim.App.1994).

■ Where evidence of sudden passion is raised and an instruction on voluntary manslaughter is properly requested, the court is required to submit the instruction. *Medlock v. State*, 591 S.W.2d 485, 486 (Tex.Crim.App. 1979); *Guerra v. State*, 936 S.W.2d 46, 47 (Tex.App.—San Antonio 1996, pet. ref'd). The issue is raised when there is some evidence, however weak, contested, or incredible, which could support a rational jury finding that the defendant killed the deceased while under the immediate influence of sudden passion arising from adequate cause. *Gold v. State*, 736 S.W.2d 685, 688 (Tex.Crim.

App.1987), *overruled in part on other grounds, Torres v. State,* 785 S.W.2d 824, 825 (Tex.Crim.App.1989); *Guerra,* 936 S.W.2d at 47.

■■■■ There must be evidence of some conduct by the deceased, or another acting with the deceased, amounting to legally sufficient provocation; that is, some conduct adequate to "produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Act of May 28, 1973, 63rd Leg., R.S., ch. 1123, art. 2, § 1, 1973 Tex. Gen. Laws 1123, 1124 (amended 1993) (current version at TEX. PENAL CODE ANN. §§ 19.02, 19.04 (Vernon 1994)) (sudden passion now serves only to mitigate punishment for a murder conviction and there is no longer a distinction between types of manslaughter). In addition, there must be some evidence which would permit a rational jury to find that the defendant was provoked and acted under a state of mind, be it anger, rage, resentment, or terror, which rendered him incapable of cool reflection. *Gold,* 736 S.W.2d at 688–89; *Guerra,* 936 S.W.2d at 48. The testimony of the defendant alone is sufficient to raise the issue of sudden passion. *Medlock,* 591 S.W.2d at 486; *Guerra,* 936 S.W.2d at 48. All relevant facts and circumstances must be considered when determining whether the evidence is sufficient to warrant a voluntary manslaughter instruction. *Sattiewhite v. State,* 786 S.W.2d 271, 287 (Tex.Crim.App.1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990); *Guerra,* 936 S.W.2d at 48.

■■■■ Although appellant testified that he was angry and jealous because Cantu was parked at the lounge, not all evidence of anger entitles a defendant to an instruction on voluntary manslaughter. *See Nance,* 807 S.W.2d at 860; *see also Owens v. State,* 786 S.W.2d 805, 808 (Tex.App.—Fort Worth 1990, pet. ref'd). There must be evidence that appellant was acting out of sudden passion. *Owens,* 786 S.W.2d at 808. Seeing Cantu sitting in the car parked at the lounge and seeing Ochoa get into the car, after appellant had ordered Cantu to avoid such situations, would not provoke a person of ordinary temper to sudden passion as de-fined by the statute. Nor would Cantu's refusal to talk with the window down or Ochoa's act of locking the door after returning to the car. There is no evidence of any other actions by Cantu or Ochoa at the time of the shooting that would have so provoked appellant. In addition, appellant testified that he initially walked towards the back of the car to leave. This testimony does not reflect that appellant was in the throes of sudden passion.

Moreover, appellant testified that he did not intend to shoot Ochoa and that he shot at the tires to prevent Cantu's departure. By denying specific intent to kill, appellant negated the essential element of intent necessary to the offense of voluntary manslaughter. *See Owens,* 786 S.W.2d at 808. Because there is no evidence that Ochoa provoked appellant or that appellant was acting from sudden passion, and because appellant's testimony negated an essential element, appellant was not entitled to an instruction on voluntary manslaughter. We hold that the trial court did not err by refusing to include such an instruction in the jury charge. Appellant's second point of error is overruled.

By his third point of error, appellant contends that the trial court erred by refusing to instruct the jury on criminally negligent homicide.

■■■■ A person acts with criminal negligence when he ought to be aware that his conduct presents a substantial and unjustifiable risk of such a nature that his failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under the same circumstances. TEX. PENAL CODE ANN. § 6.03(d) (Vernon 1994). In the context of criminally negligent homicide, criminal negligence means that the defendant should have been aware of the risk surrounding his conduct but failed to perceive it. *Espinosa v. State,* 899 S.W.2d 359, 365 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *Burnett v. State,* 865 S.W.2d 223, 229 (Tex.App.—San Antonio 1993, pet. ref'd). Before a charge on criminally negligent homicide is required, however, the record must contain evidence showing that the defendant was unaware of

the risk. *Mendieta v. State,* 706 S.W.2d 651, 653 (Tex.Crim.App.1986).

■ The evidence in this case shows that appellant was familiar with firearms, knew the gun was loaded, intended to fire a gun at a carload of people, and admitted knowing that such an act was clearly dangerous to human life. Such evidence indicates a person who is aware of a risk of injury or death involving use of the gun, particularly under the circumstances presented here. *See Thomas v. State,* 699 S.W.2d 845, 852 (Tex. Crim.App.1985). We conclude that appellant was not entitled to an instruction on criminally negligent homicide. Accordingly, we hold that the trial court did not err by refusing to instruct the jury on criminally negligent homicide. We overrule appellant's third point of error.

■ By his fourth point of error, appellant complains that the trial court erred by refusing to instruct the jury on the voluntariness of his actions.

■ As we previously stated, appellant clearly intended to aim and fire a loaded gun at a carload of people to prevent Cantu from leaving the parking lot. We find no evidence in the record that the gun fired accidently. A defendant's conduct is not rendered involuntary merely because he did not intend the result of his conduct. *Adanandus,* 866 S.W.2d at 230; *Molinar v. State,* 910 S.W.2d 572, 584 (Tex.App.—El Paso 1995, no pet.). We conclude that appellant was not entitled to an instruction on voluntariness. Accordingly, we hold that the trial court did not err by refusing to instruct the jury on the voluntariness of appellant's actions. Appellant's fourth point of error is overruled.

### *Improper Argument*

By his first point of error, appellant contends that the trial court erred by not granting a mistrial during the prosecutor's closing argument. Appellant complains that (1) the prosecutor improperly reminded the jurors of promises made during voir dire, (2) used a juror's name during argument, and (3) made the following statement:

> The law doesn't allow us to take it into our own hands. We are a society of law and order and justice for all. That might seem a little cliche, but we can't take the law into our own hands. If you don't convict this man for murder, people in the Valley are going to think that they can carry a gun and shoot people in cars.

The trial court sustained appellant's objection concerning the juror's name, but denied a mistrial on that basis. The trial court overruled appellant's objection regarding the quoted argument, cautioned the prosecutor, and also denied a mistrial.

■ For two reasons, we hold that appellant waived his complaint that the prosecutor improperly reminded jurors of promises made during voir dire. First, appellant failed to object when similar comments were made earlier by the prosecutor during closing argument. Second, when appellant did object, he objected to the use of a juror's name and made no reference to voir dire promises.

Appellant did object that the prosecutor used a juror's name in closing argument. Appellant cites no authority that such a reference is error. Moreover, appellant offers no argument to show how using the juror's name caused harm. Because this complaint was not properly addressed by appellant, we consider it waived. Tex.R.App. P. 74.

■ The State contends that appellant did not properly preserve error as to the quoted argument because appellant's objection was merely "improper argument." However, the general objection, "we would object to that as being improper argument," preserves error when the record reflects that the trial court understood the nature of the error. *Everett v. State,* 707 S.W.2d 638, 641 (Tex.Crim.App.1986). Because the trial court admonished the prosecutor after overruling appellant's objection, we conclude that the court understood the objection. *See Everett,* 707 S.W.2d at 641. Thus, we will consider appellant's complaint concerning the quoted statement.

■ To constitute proper jury argument, the argument must encompass one of the following: 1) summation of the evidence presented at the trial; 2) reasonable deductions

drawn from that evidence; 3) answers to the opposing counsel's argument; or 4) a plea for law enforcement. *McFarland v. State,* 845 S.W.2d 824, 844 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). When the State's commentary falls within any of these categories, the trial court does not err in allowing such argument. *See McClure v. State,* 544 S.W.2d 390, 393 (Tex.Crim.App.1976).

We conclude that the prosecutor's statement was a proper plea for law enforcement. *See Luna v. State,* 461 S.W.2d 600, 601 (Tex.Crim.App.1970) (no reversible error in prosecutor's argument that "people that have such ideas in this county in the future will be put on notice that the citizens of this county are not going to put up with it"); *Lawson v. State,* 896 S.W.2d 828, 833 (Tex. App.—Corpus Christi 1995, pet. ref'd) (holding that argument requesting jury to "send a very strong message to this man and everyone else in this community or whatever who thinks it's okay to get out there and poison the community with drugs" was proper plea for law enforcement). Accordingly, we hold that the trial court did not err by allowing the argument.

We hold that the trial court did not err by refusing to grant a mistrial during the prosecutor's closing argument. We overrule appellant's first point of error.

We affirm the judgment of the trial court.