NUMBER 13-98-034-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


JOSEPH G. HUIZAR , Appellant,



v.




THE STATE OF TEXAS , Appellee.

___________________________________________________________________



On appeal from the 36th District Court 

of Aransas County, Texas.

____________________________________________________________________



O P I N I O N

Before Justices Seerden, Hinojosa, and Rodriguez

Opinion by Justice Rodriguez


 A jury found appellant Joseph G. Huizar guilty of murder, (1) enhanced by two prior felony convictions. The court
sentenced him to confinement for a period of not less than twenty-five years and not longer than life imprisonment. Huizar
asserts nine points of error claiming ineffective assistance of counsel, and three points regarding the sufficiency of the
evidence. We affirm.

Facts


 On the evening of October 3, 1993, Huizar was riding around town with his friend, Randal Kelsay, in Kelsay's car. Huizar
obtained possession of Kelsay's .25 caliber Barretta automatic pistol, which Kelsay had stored underneath the front seat of
the car. Kelsay testified he was high on drugs and alcohol and was not certain how many rounds of ammunition were in the
pistol, but that there was probably one to three rounds in the clip.

 Dora Huizar, Huizar's eleven-year-old daughter, testified Huizar came to the house at about 7:00 or 8:00 p.m. Dora let him
in and upon seeing that her mother, Patricia, was not home, Huizar left. Later that night, while sleeping on the couch, Dora
awoke to hear him "messing with the doorknob" to get into the house. She saw Huizar walk into the house and go into
Patricia's bedroom. Dora heard her parents arguing and then heard a gunshot, after which Huizar ran out of the house. Dora
went to check on Patricia, but did not notice anything wrong because the bed covers were pulled over Patricia's head. 
Dora's two-year-old sister, Cassandra, who had been sleeping next to Patricia, came out of the bedroom a short time later
and told Dora, "Mommy's bleeding." After confirming that Patricia was bleeding, Dora and Cassandra ran to the home of
Luanna Barrera, a neighbor, who called the police and an ambulance. Barrera confirmed Dora's version of events.

 Rockport police officer Steve Dobie was the first officer on the scene. He stated that when he went to check on Patricia,
she was still alive. Martin DeLeon, captain of the criminal investigation unit of the Aransas County Sheriff's Department,
identified State's Exhibit Two, which was a rough scale drawing of the bedroom where Patricia was shot. He pointed to the
place where a .25 caliber spent shell casing was found on the floor. He also testified to finding a wallet containing Huizar's
identification underneath the bed. 

 DeLeon further testified that on the day of trial, he fired fifty rounds of ammunition from the Barretta pistol. The weapon's
clip holds seven rounds of ammunition and the chamber holds an additional bullet. He testified there are two ways to
determine if the weapon is loaded. First, there is a release ejection which automatically makes the barrel pop up so that one
can look inside. This also enables the viewer to determine if a live round is in the chamber. The second way is to pull the
clip out and visually examine the number of shells in the clip. Both methods must be utilized to make certain the weapon is
not loaded. There is no "safety" on the gun, which DeLeon testified was highly unusual. Because federal law now requires
these types of weapons to be equipped with a safety, DeLeon said the gun was probably at least eighteen years old. 

 During cross-examination, DeLeon admitted that .25 caliber weapons are normally checked by pulling the slide back rather
than tipping the barrel, and that someone who is not familiar with the model may not know that the barrel flips up. He
further testified that if there is only one bullet in the clip, and someone slides the barrel back to see if the gun is loaded, a
bullet will not be in the chamber. However, when the slide is released, the bullet in the clip will be injected into the
chamber. If the clip is then removed, there will not be any bullets in the clip, so it would appear that the gun is not loaded. 
Conversely, if there is a bullet in the clip, and not in the chamber, the gun could be fired repeatedly without causing injury. 
It is only when the slide is pulled back to check the chamber and then released that the bullet is injected into the chamber.

 Deputy Steve Bynum testified that Huizar's friend, Pat Tristan, led him to where Tristan had buried the pistol. Bynum
checked the weapon and determined the clip was empty.

 Huizar testified in his own defense. He stated he and Patricia were married for fifteen years and during that time, they had
gone through several periods of separation. On the day in question, Patricia had told Huizar to move out because she was
tired of him coming home at all hours of the morning. Huizar stated he took his clothes and put them in his car, but left the
car at home because Patricia needed it to get to work. Huizar explained that Dora's testimony regarding his arrival at the
house around seven or eight that evening was correct and that he had come to pick up his car, which he then presumably
left at his brother-in-law's (2)house. He then went riding with Kelsay.

 Both Huizar and Kelsay purchased and ingested cocaine. While in the car, Kelsay showed Huizar the Barretta. Huizar put
it in his back pocket. Kelsay later dropped Huizar off at his brother-in-law's home. As a joke, when his brother-in-law
opened the front door, Huizar pointed the gun at him, told him it was an armed robbery, and fired. The gun did not
discharge. Huizar stated:

 And he got scared, you know, and told [sic] me if I was sure the gun was not loaded. And I told him I was sure, you know,
and I showed him. I checked it again. I pulled the chamber back and looked inside to see if there was a bullet in. I took
the clip out in front of him and I didn't see no bullet in it. I was positive it didn't have a bullet.

Huizar was at his brother-in-law's home approximately five to ten minutes before he went back to Patricia's house. Huizar
stated his niece called and informed him that Patricia had found his wallet. Huizar stated he returned to Patricia's house to
retrieve the wallet.

 Huizar contradicted Dora's testimony that he had "jiggled" the door to get into the house by stating Patricia opened the
door for him. He followed her into the bedroom where they got into a "little" disagreement. (3) He pulled out the gun and
began to play with it. Patricia told him to put the gun away. Huizar testified as to what happened next:

 And I told her, you know, that it was not loaded, you know. And, I mean, I was positive it was not loaded. And I put it to
her head and pulled, you know, when I put it to her head, I had been playing. I had been hearing that clicking noise. And
the next thing I heard was a bang. And I just -- I just -- I don't know what happened after that. I just freaked out. And I just
took off running.



 Huizar went to the home of Pat Tristan. Huizar asked Tristan for ammunition so that he could shoot himself. Tristan took
the pistol away from Huizar and hid it. Huizar apparently left. Later that morning, Tristan called the Aransas County
Sheriff's Department and showed them where the pistol was located. The deputies recovered the pistol and Huizar's
handwritten note to his children which asked them to forgive him. The note stated the shooting had been an accident and
that he was going to commit suicide. Huizar was arrested, without incident, at his cousin's home.

 To rebut Huizar's testimony that he had never beaten up Patricia, the State offered the testimony of Dora and Norma
Gatica, a family friend. Dora testified that on two previous occasions she had seen Huizar hit her mother hard enough to
give her a black eye. Gatica testified that Huizar told her he had hit Patricia because "she cared more about her car than she
did him." Gatica also testified to an incident when Huizar kicked Patricia and broke her jaw. 

Points of Error Relating to Sufficiency of the Evidence 

 In point of error ten, Huizar claims the evidence is legally insufficient to support the jury's verdict. Claims of legal
insufficiency are analyzed under the familiar Jackson standard: evidence is viewed in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 320 (1979). 

 A person commits murder if he "intentionally or knowingly causes the death of an individual." Tex. Pen. Code Ann. §
19.02(b) (Vernon 1994). A person commits an act intentionally "when it is his conscious objective or desire to engage in
the conduct or cause the result." Tex. Pen. Code Ann. § 6.03(a) (Vernon 1994). A person commits an act knowingly "when
he is aware that his conduct is reasonably certain to cause the result." Tex. Pen. Code Ann. § 6.03(b) (Vernon 1994). 
Intent is usually established by circumstantial evidence, Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.]
1978), and is usually inferred from the acts, words, and conduct of the accused. Saenz v. State, 976 S.W.2d 314, 320 (Tex.
App.--Corpus Christi 1998, no pet.). Thus, it is a fact issue for the jury. Rodriguez v. State, 793 S.W.2d 744, 748 (Tex.
App.--San Antonio 1990, no pet.). The specific intent to kill may also be inferred from the use of a deadly weapon, unless
the manner of its use makes it readily apparent that death or serious bodily injury could not result. Adanandus v. State, 866
S.W.2d 210, 215 (Tex. Crim. App. 1993) ("[i]f a deadly weapon is used in a deadly manner, the inference is almost
conclusive that [the defendant] intended to kill . . . .").

 The jury heard Huizar's testimony that Patricia had kicked him out of the house the day of the shooting, and that this was
not the first time Huizar and Patricia had been separated. Both Dora and Huizar testified that immediately before the
shooting, he and Patricia argued. Dora and Gatica testified regarding previous acts of violence by Huizar against Patricia. 
Kelsay stated that he had placed the Barretta, loaded with one to three rounds of ammunition, under the front seat of his car
and that he did not know Huizar had taken the pistol. Huizar admitted to keeping the pistol after Kelsay showed it to him.

 It is axiomatic that we defer to the jury's resolution of factual disputes. That is, the power to reasonably infer facts from
the evidence, to resolve credibility issues, and to determine who to believe or disbelieve is not ours but the jury's. Hall v.
State, 970 S.W.2d 137, 140 (Tex. App.--Amarillo 1998, pet. ref'd). Viewing the evidence in the light most favorable to the
verdict, we hold a rational jury could have found beyond a reasonable doubt that Huizar had the requisite intent to murder
Patricia Huizar. 

 Point of error ten is overruled.

 In point of error eleven, Huizar asserts the evidence is factually insufficient to rebut the defense of mistake of fact. 
"Mistake of fact" is a defense to prosecution. See Tex. Pen. Code Ann. § 8.02(a) (Vernon 1994). When the issue is raised
by the evidence, the defendant is entitled to an affirmative submission of this defense. Lynch v. State, 643 S.W.2d 737, 738
(Tex. Crim. App. 1983). Such an instruction imposes an additional burden upon the State to negate the mistake of fact
defense. Bruno v. State, 812 S.W.2d 56, 60 (Tex. App.--Houston [14th Dist.] 1991), aff'd, 845 S.W.2d 910 (Tex. Crim.
App. 1993).

 The jury was properly instructed regarding Huizar's mistake of fact defense, as follows:

 You are instructed that it is a defense to prosecution of criminally negligent homicide that a person through mistake
formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for
commission of the offense. 



(Emphasis added). Huizar was not convicted of criminally negligent homicide, but of murder. The defensive instruction
was not given with respect to the murder charge; however, Huizar did not object that the instruction was limited to the
offense of criminally negligent homicide. (4) Finding Huizar guilty of murder, the jury never reached the lesser included
offense of criminally negligent homicide, and thus, it did not consider Huizar's mistake of fact defense. 

 Point of error eleven is overruled.

 In point of error twelve, Huizar contends the evidence is factually insufficient to support the jury's verdict. This requires
us to put aside the requirement that the evidence be viewed through a prism of light favorable to the State. Instead, our task
is to peruse the entire record and decide whether the overwhelming weight of the evidence so contradicts the verdict as to
make that verdict clearly wrong or unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Barrera v. State,
978 S.W.2d 665, 671 (Tex. App.--Corpus Christi 1998, no pet.). We must affirm the judgment unless we conclude the
verdict is clearly wrong and unjust. Clewis, 922 S.W.2d at 132-33; Barrera, 978 S.W.2d at 671.

 Officer DeLeon testified that if Huizar checked the barrel first and then removed the clip, thereby injecting the bullet into
the barrel, it would appear to Huizar that the gun was empty. Huizar testified he did just that. Huizar also stated that he
"fired" the gun at his brother-in-law and the weapon did not discharge, again leading him to believe the gun was not loaded.
(5) The jury, as the sole trier of the facts, was entitled to accept or reject any or all the testimony, and to determine the
weight to be given that testimony. Williams v. State, 680 S.W.2d 570, 576 (Tex. App.--Corpus Christi 1984), pet. ref'd,
692 S.W.2d 100 (Tex. Crim. App. 1985). We conclude that given the entire record, and considering the contradictory
evidence, the decision reached by the jury was not clearly erroneous or unjust.

 Point of error twelve is overruled.

Points of Error Relating to Ineffective Assistance of Counsel


 In points of error one through nine, Huizar complains he received ineffective assistance of counsel. To establish
ineffective assistance of counsel, Huizar must show (1) his attorney's representation was below an objective standard of
reasonableness, and (2) but for his attorney's errors, the result of the proceeding would have been different. Strickland v.
Washington, 466 U.S. 668, 687 (1984); Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986); Brown v. State,
871 S.W.2d 852, 856 (Tex. App.--Corpus Christi 1994, pet. ref'd). There is a strong presumption that counsel is competent
and actions taken during trial are part of the attorney's trial strategy. Strickland, 466 U.S. at 688-89; Miniel v. State, 831
S.W.2d 310, 323 (Tex. Crim. App. 1992). Whether Huizar received effective assistance of counsel is judged by the totality
of the representation, not by isolated acts or omissions. Ex Parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990);
Sanders v. State, 963 S.W.2d 184, 190 (Tex. App.--Corpus Christi 1998, pet. ref'd).

 In points of error one and two, Huizar complains his counsel did not object to the rebuttal testimony of Dora Huizar and
Norma Gatica concerning previous occasions of family violence.

 In asserting these points of error, Huizar makes two arguments. The first is that the State could only rebut Huizar's
testimony that there was never any family violence that resulted in either the police being summoned or Patricia seeking or
obtaining medical assistance. Huizar completely overlooks his denial in response to counsel's question asking whether he
and Patricia "never got into a big fight where you beat her up and anything like that?" The code of criminal procedure
provides:

 In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and
circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together
with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.



Tex. Code Crim. Proc. art. 38.36(a) (Vernon Pamph. 1999). Had the State not offered the testimony of Dora and Gatica,
the jury would have been left with the incorrect impression, created by Huizar, that he and Patricia had never had any
arguments that resulted in family violence. 

 The indictment alleged Huizar acted intentionally or knowingly with respect to Patricia's death. The rules of evidence
provide that all relevant evidence is generally admissible. Tex. R. Evid. 402. Rule 401 provides that evidence "havingany
tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less
probable" is relevant. Tex. R. Evid. 401 (emphasis added). Thus, the previous acts of family violence were admissible to
show it was more probable than not that Huizar intended to shoot his wife. See Tex. R. Evid, 404(b) (evidence of character
proving conforming conduct admissible on the issue of intent).

 Huizar's second argument is that his counsel should have objected to the State's use of rebuttal witnesses because they were
called for the sole purpose of inflaming the minds of the jury. As support for this contention, Huizar points to the
prosecutor's argument to the court that the offered testimony "has nothing to do with statements made by the defendant,
peace officers, or others." Huizar takes the prosecutor's statement out of context. The statement was made in response to
Huizar's objection that statements made to Officer Place, a previously offered rebuttal witness, were not voluntarily made. 
In offering Dora and Gatica's rebuttal testimony, the following exchange transpired:

 COUNSEL: Okay. Your Honor, all I'd request is whatever other rebuttal witnesses he have that I be given opportunities to
go into their voluntaryness. [sic]

 STATE: It has nothing to do with statements made by the defendant, peace officers, or otherwise.

 COUNSEL: Not custodial?

 STATE: No. These are not law enforcement witnesses.

 Clearly, the prosecutor was informing the court that the voluntariness of Huizar's statements was not going to be an issue
with the testimony of the witnesses. 

 Points of error one and two are overruled.

 In points of error three and four, Huizar claims error in that his counsel did not request a limiting instruction informing the
jury it could consider Dora and Gatica's rebuttal testimony only to assess Huizar's credibility, not his guilt of the charged
offense. It is valid trial strategy not to request such an instruction as it can serve to accentuate the extraneous offenses as
opposed to limiting them. See Bradley v. State, 960 S.W.2d 791, 804 (Tex. App.--El Paso 1997, no pet.); Curry v. State,
861 S.W.2d 479, 484-85 (Tex. App.--Fort Worth 1993, pet. ref'd). Huizar has not explained why the failure to request a
limiting instruction could not be considered sound trial strategy in the present case.

 Points of error three and four are overruled.

 In point of error five, Huizar claims his counsel was ineffective for failing to request that the charge include a limiting
instruction concerning Dora and Gatica's testimony. We agree that counsel erred in not requesting such an instruction.
However, the second prong of Strickland requires Huizar to demonstrate that but for counsel's error, the result would have
been different. Strickland, 466 U.S. at 687. 

 We have reviewed the entire record in this case and cannot conclude that this single, isolated error, mandates reversal on
the basis of ineffective assistance of counsel. The record shows trial counsel conducted a thorough voir dire, conducted
cross-examination of witnesses which, particularly with respect to Captain DeLeon, provided evidence favorable to
Huizar's mistake of fact defense, successfully raised objections to testimony and witnesses, and made well-reasoned closing
arguments during both the guilt/innocence and punishment phases of the trial. Given the totality of these facts, we cannot
say that but for Huizar's counsel's failure to request a limiting instruction the result of Huizar's trial would have been
different.

 Point of error five is overruled. 

 In point of error six, Huizar complains of his counsel's failure to request a limiting instruction during trial or in the charge
concerning the effect of his previous convictions. 

 Huizar's defense was his mistaken belief that the gun was not loaded. Only he could provide this testimony. Because
Huizar testified, his previous felony convictions were relevant and admissible. See Tex. R. Evid. 609; Cisneros v. State,
692 S.W.2d 78, 83 (Tex. Crim. App. 1985). Clearly, defense counsel believed it was best to be "up front" with the jury
regarding Huizar's criminal record from the beginning of the trial. Counsel questioned the panel extensively during voir
dire on the issue of Huizar's criminal record, and informed the panel on at least four occasions that the jury could consider
Huizar's past offenses only for the purpose of determining his credibility and not to determine whether he committed the
charged offense. During his closing argument, counsel again told the jury they could consider the previous felony
convictions only for credibility purposes. As in point of error number five, we cannot say that had counsel additionally
requested a limiting instruction the results would have been different.

 Point of error six is overruled. 

 In points of error seven and eight, Huizar asserts his counsel was ineffective for failing to object to the prosecutor's closing
arguments that made reference to Huizar's history of family violence and his prior criminal history. To be proper, jury
argument must fall within one of the following four categories: (1) summation of the evidence; (2) reasonable deduction
from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. Davila v. State, 952
S.W.2d 872, 879 (Tex. App.--Corpus Christi 1997, pet. ref'd). In making these statements, the prosecutor was summarizing
the testimony admitted and inviting the jury to test Huizar's credibility regarding his mistake of fact defense. As such, the
statements were permissible jury argument to which an objection was not warranted. An attorney's failure to object to
proper argument cannot be ineffective assistance. See Richards v. State, 912 S.W.2d 374, 379 (Tex. App.--Houston [14th
Dist.] 1995, pet. ref'd). Accordingly, counsel was not deficient in his performance, and we do not reach the prejudice prong
of the Strickland analysis.

 Points of error seven and eight are overruled.

 In point of error nine, Huizar complains his counsel failed to object during closing argument to the State's misstatement of
the evidence. When talking about the "suicide" note Huizar allegedly wrote, the prosecutor made the following statement:

 Why is it -- why does Joseph Huizar know that his kids will not be able to forgive him? Why does he say that in this note? 
He tries to tell them it's an accident, but he knows his children will not forgive him. The same children that has [sic] seen
him on those occasions beat up on his mother. . . .



 Huizar claims this statement injected facts outside the record, i.e., that he beat his mother. It is clear from the context of
the argument that the prosecutor meant to say "beat up on their mother," not "beat up on his mother." We conclude the
statement was not a misstatement of the evidence, but a mere slip of the tongue.

 Point of error nine is overruled.

 The judgment is AFFIRMED.

 Nelda V. Rodriguez

 Justice



Do not publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this the 27th day of May, 1999.

1. Tex. Pen. Code Ann. § 19.02(b) (Vernon 1994).

2. The brother-in-law was never identified by name.

3. Dora had previously testified that the argument was "low-key." 

4. Huizar did not assign as error counsel's failure to object to the charge on this basis.

5. We note that neither the State nor Huizar called the brother-in-law as a witness, thus the jury was not able to test the
veracity of Huizar's statements that he (1) fired the gun at his brother-in-law, or (2) checked the gun in the presence of his
brother-in-law and determined it was not loaded.