COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS


TERRY DANIEL MCDONALD,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-08-00103-CR



Appeal from the


409th District Court


of El Paso County, Texas


(TC# 20050D05962)


O P I N I O N


 Appellant, Terry McDonald, was convicted of murder and sentenced to life imprisonment. 
In three issues on appeal, Appellant complains of ineffective assistance of counsel, improper jury
argument, and a violation of the attorney-client privilege. We affirm.

BACKGROUND

 For the past fifteen years, Darryl Glidewell rented a bedroom in Felipe Andrade's duplex. 
Glidewell and Andrade maintained a father-son type of relationship, and would watch television,
travel, and frequent bars together. Although Glidewell noted that Andrade would occasionally "party
hard" when he consumed alcohol, Glidewell never knew Andrade to be a crazy or angry drunk, nor
would he become angry if someone rejected his sexual advances.

 In November 2004, Andrade, at age 61, allowed Appellant to move into the other spare
bedroom in his duplex rent free in exchange for performing work around the house. The following
month, Glidewell noticed that the television and computer monitor were broken, and learned that
Andrade and Appellant had fought. However, sometime later, Appellant moved into Andrade's
room and began sharing his bed. Glidewell never heard any complaints that Appellant refused to
engage in sexual relations with Andrade.

 In late May 2005, Andrade disappeared. Specifically, Glidewell recalled last seeing Andrade
on May 22, 2005, Glidewell's birthday. In June, Glidewell questioned Appellant about Andrade's
disappearance, and Appellant responded that Andrade took a trip to Washington but was keeping in
contact through email and instant messaging. Also at that time, Appellant threw out a dresser,
assumed full control over the house, and locked himself in Andrade's room.

 Andrade's sister, Rachel Morales, grew concerned when she stopped hearing from Andrade. 
As Andrade did not respond to letters from family members, Rachel sent her eldest brother to check
on him. But no one answered the door. After another visit proved unsuccessful, Rachel went to
Andrade's duplex in late August 2005. But she too received no answer when she knocked on the
door. On August 30, 2005, Rachel returned to Andrade's duplex with her brother and husband, and
after receiving no response at the door, they removed the back door from its hinges and entered the
house.

 Inside, Rachel confronted Appellant, who just exited Andrade's bedroom and appeared upset
and confused by their presence in the house. Appellant told Rachel that Andrade was upset and left,
and was never returning. He further relayed that Andrade left him in charge of the house and
finances. Rachel found Appellant's explanation implausible as Andrade would not have left without
telling her first. And she grew suspicious upon seeing Andrade's bank statements, reflecting
transactions taking place in El Paso, and certain necessities in the trash, including his eyeglasses,
checkbook, and passport, and his medical supplies for his diabetes. Rachel told Appellant that if she
did not hear from Andrade by the following day, she was going to the police.

 The next day, Rachel returned to Andrade's duplex with the police. Appellant, however, had
already left, taking his personal belongings and the hard drive from the computer. On September
22, 2005, Glidewell and Rachel found Andrade's decomposed corpse buried under a truck camper
shell in the front yard of the duplex. The autopsy revealed that the degree of decomposition was
consistent with being buried in the ground for almost four months. Further, the autopsy established
that the cause of death was asphyxiation due to compression of the neck, and that Andrade also
suffered a skull fracture that may have contributed to his death.

 On October 4, 2005, Appellant was arrested for murder in Bayside, Wisconsin. After
Appellant was transported to the station, an officer cleaned the squad car. In so doing, he found a
credit-card sleeve tucked into a seam in the backseat floorboard. Inside the sleeve was Andrade's
ATM card, check card, and Lone Star card. Andrade's bank records showed ATM withdrawals and
online purchases made from June through October of 2005.

 Appellant's defensive theory at trial was that he killed Andrade in self-defense. Appellant
relayed that at first, he had no problems with Andrade. They would watch television together,
converse over common interests, and frequent bars together. Claiming Andrade had an avid interest
in internet pornography, Appellant noted that he helped Andrade obtain internet service at some
point in December or January, so that Andrade would be able to search for such sites on the world
wide web. (1) Also during this time, Appellant began taking over Andrade's finances "to bring those
funds back into context," as Andrade "was always spending and borrowing." In addition, Appellant
moved into Andrade's room and began sharing his bed as Appellant did not have a bed and
Glidewell's smoking made him dizzy.

 However, in late December, after Christmas, Appellant testified that Andrade, "out of the
blue," asked to perform oral fellatio on him. When Appellant refused, Andrade gave him a "weird
look" and Appellant went to bed. According to Appellant, Andrade persisted in his request to
perform oral sex over the next week. Appellant stated that Andrade grew more "excited" in his
requests and tried to entice him with pornography. Appellant eventually acquiesced to Andrade's
requests, claiming Andrade would "kick [him] the fuck out" if he refused.

 Appellant also alleged that Andrade raped him on another occasion. After a night of drinking
with Andrade at a bar, Appellant returned home and passed out. When he awoke, Appellant claimed
that he was bleeding from the anus. Appellant testified that when he confronted Andrade about it,
Andrade admitted to fondling him while he was unconscious.

 According to Appellant, Andrade repeatedly demanded sexual favors from him. Appellant
testified that Andrade would play pornographic videos, masturbate in front of him, ask him to join
in, and plead for him to engage in anal intercourse. Appellant refused because he was not gay and
he had been sexually molested as a child. Because of his repeated refusals, Appellant testified that
Andrade would get mad and on one occasion, struck him in the face. Appellant relayed that on
another occasion, Andrade got so mad that he broke the computer monitor and television with a
hammer. Appellant also stated that Andrade called him a "bitch," "whore," and "prostitute," and
told him that he was "fucking worthless" and was only there for his enjoyment.

 Turning to the day of Andrade's death, Appellant related that Andrade was standing near the
kitchen door, yelling that Appellant was going to"fuck him in the ass." Appellant then recalled
Andrade throwing a book and bicycle pump at him. Appellant attempted to calm Andrade down,
but Andrade, according to Appellant, turned toward the area where the shovel and hammer were
kept. At that point, Appellant grabbed the hand Andrade was using to hold his coffee mug, and they
became entangled in a fight, hitting each other. Appellant then felt a blow to his head, at which point
he experienced "blurred vision, dizziness, and nausea," lost consciousness, and fell to the floor. 
When he awoke, Appellant was on top of Andrade. Appellant could not recall what happened but
saw blood trickling down from Andrade's ear and mouth. Appellant did not call for help, and when
night fell, he buried Andrade in the front yard, covering his grave with a camper shell.

 During the punishment phase of the trial, the State introduced evidence that Appellant
previously murdered Mary Mount in Florida. According to his confession, Appellant claimed that
Mary enjoyed physically demanding sex, and that after having sex one night, he awoke to find Mary
having trouble breathing and clutching her throat. Appellant tried to help her by performing the
Heimlich Maneuver, doing chest compressions, and massaging her throat, but his state of panic and
anxiety caused him to black out. When he regained consciousness, Appellant was lying halfway on
top of Mary and discovered that she was not breathing. Rather than calling for help, Appellant
stuffed her body in a duffle bag, put it in the trunk of her car, drove to her mother's house, and stole
Mary's computer and jewelry. He then drove to Texas, using Mary's credit and debit cards along
the way, and ultimately buried her body in Hudspeth County.DISCUSSION

 Appellant raises three issues for our review. The first contends that counsel was ineffective,
the second alleges an improper closing argument, and the third asserts a violation of the attorney-client privilege. For the reasons discussed below, we find no merit in any of the issues raised.

Ineffective Assistance of Counsel

 In his first issue, Appellant complains of trial counsel's effectiveness in two respects. 
First, he contends that counsel failed to timely raise an insanity defense despite evidence showing
he was mentally ill. Second, Appellant faults counsel for not requesting an instruction on sudden
passion when the evidence raised the defense. We do not believe counsel rendered ineffective
assistance in either regard.

Standard of Review

 The federal and state constitutions guarantee a defendant the right to reasonably effective
assistance of counsel. See U.S. Const. amend. VI; Tex. Const. art. I, § 10. However, that right
does not exclude errorless counsel. Robertson v. State, 187 S.W.3d 475, 483 (Tex. Crim. App.
2006). Thus, to prevail on a claim of ineffective assistance of counsel, the defendant must show (1)
his counsel's performance was deficient and (2) a reasonable probability exists that the result of the
proceeding would have been different but for counsel's actions. Strickland v. Washington, 466 U.S.
668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 Under the first prong, the defendant must show that counsel's performance fell below an
objective standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). In other words, the defendant must prove objectively, by a preponderance of the evidence,
that counsel's representation fell below professional standards. Mitchell v. State, 68 S.W.3d 640,
642 (Tex. Crim. App. 2002). The second prong requires the defendant to show a reasonable
probability that but for counsel's unprofessional errors, the result of the proceeding would have been
different. See Strickland, 466 U.S. at 694; Thompson, 9 S.W.3d at 812. "Reasonable probability"
means a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at
694. Failure to make a showing under either prong defeats a claim for ineffective assistance of
counsel. Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

 In analyzing counsel's effectiveness, we consider the adequacy of counsel's assistance as
viewed at the time of trial, not through hindsight. Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.
- Houston [1st Dist.] 1996, no pet.). Thus, the defendant must overcome the presumption that the
challenged action might be considered sound trial strategy under the circumstances. Strickland, 466
U.S. at 689; Gamble, 916 S.W.2d at 93. Moreover, "any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." 
Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (quoting Thompson, 9 S.W.3d at 814). 
A silent record that provides no explanation for counsel's actions will not overcome the strong
presumption of reasonable assistance. Rylander, 101 S.W.3d at 110-11. Although we will not
speculate to find an attorney ineffective, "we commonly assume a strategic motive if any can be
imagined and find counsel's performance deficient only if the conduct was so outrageous that no
competent attorney would have engaged in it." Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim.
App. 2005); see also Gamble, 916 S.W.2d at 93.

Insanity Defense

 The record reflects that trial counsel filed a motion for a competency examination on
February 24, 2006, noting that Appellant attempted suicide by ingesting 153 pills of Selexia and 24
pills of Colopan. Counsel also contended that Appellant's communications with him were
"increasingly erratic," that he was not taking his medications, and that he was "in acute need of
psychiatric intervention." On May 1, 2006, the trial court granted the motion and ordered Appellant
to be examined by Dr. Cynthia Rivera. Dr. Rivera found Appellant competent to stand trial.

 On August 1, 2007, sixteen days before the set trial date, counsel, at Appellant's request, filed
notice of intent to raise an insanity defense, and moved for another psychiatric examination of
Appellant to determine whether he was insane at the time of the murder. (2) According to counsel,
Appellant's sanity was questionable given: (1) his attempted suicide in March 2006; (2) his
confession, which suggested he suffered from blackouts; (3) his pro se pleadings for mandatory
withdrawal and to recuse the judge, which seemingly indicated a "psychiatric imbalance;" and (4)
the fact that he "lost it" on another day while in jail and destroyed an entire file by flushing it down
the toilet. The prosecutor, believing the insanity defense was a stalling tactic, responded that there
was no evidence proving Appellant's alleged actions while in jail, argued that Appellant's pro se
pleadings and testimony at prior hearings demonstrated sanity, and noted that counsel had not once
raised insanity in the two years he had to prepare for trial, even when he moved for the competency
examination in February 2006. Counsel retorted that the insanity issue was not raised sooner for two
reasons: (1) Appellant was insisting on raising insanity although counsel "didn't see the basis for
it;" and (2) because the trial court denied his motion to suppress Appellant's confession the month
before, the defense's strategy was changed to focus on the blackout alleged therein. (3)

 The trial court found counsel's notice of the defense untimely, noting former article 46.03,
§ 2(a)(2) required counsel to give notice of insanity at the time the article 28.01 pretrial hearing,
which was held on December 15, 2006. See Tex. Code Crim. Proc. Ann. art. 46.03, § 2(a)(2)
(stating that a defendant must file notice of insanity at the pretrial hearing set by the court). Because
he did not, the notice was untimely, and the court ruled that any evidence of insanity would not be
admissible. Nevertheless, the trial court, on October 5, 2007, ordered Appellant to submit to an
examination by Dr. Arthur Ramirez. Those results are not found in the record.

 On appeal, the State notes that following the trial, Appellant filed a motion for new trial but
did not allege ineffective assistance of counsel, that no hearing was held on the motion, and that the
motion was overruled by operation of law, thus presenting a silent record from which we cannot
determine why counsel did not raise the insanity defense sooner than he did. As we noted before,
a silent record that provides no explanation for counsel's actions will not overcome the strong
presumption of reasonable assistance. Rylander, 101 S.W.3d at 110-11. However, at the hearing
on counsel's notice of intent to raise the insanity defense, he explained why he did not raise the
defense sooner. Thus, we are not faced with a completely silent record here.

 Nevertheless, we do not find any merit in Appellant's allegation of ineffective assistance of
counsel. The decision not to pursue an insanity defense is a matter of trial strategy, see Gottson v.
State, 940 S.W.2d 181, 185 (Tex. App. - San Antonio 1996, pet. ref'd), and we cannot conclude that
counsel's failure to seek an insanity defense sooner than he did so in this case lacked a plausible
basis. See Gamble, 916 S.W.2d at 93 (we consider counsel's actions at the time they occurred, not
through hindsight).

 The record shows that Appellant was examined by two doctors. The first doctor concluded
that Appellant was competent, and although the second doctor's conclusion does not appear in the
record, we presume he found Appellant competent as well, as Appellant later stood trial and the
insanity defense was not asserted again. Although Appellant alleges that his pro se pleadings
demonstrated a psychiatric imbalance, we, having reviewed the pleadings and his testimony at the
pretrial hearings and trial, note that he was able to communicate his position clearly and competently,
that he demonstrated an understanding of the legal proceedings in the case, and that his testimony
was lucid and clear. Even counsel acknowledged to the court that he "didn't see the basis for" the
defense, acknowledging that he was pursuing the defense at Appellant's insistence. It was not until
after the trial court denied the motion to suppress Appellant's confession that the defense decided
to change strategies to focus on the blackout alleged in the confession and pursue insanity. (4) Such
were plausible bases for counsel not to pursue the defense of insanity earlier than he did, and we do
not find counsel's performance deficient in this regard. See Gottson, 940 S.W.2d at 185 (finding
counsel's decision not to pursue insanity was sound strategy when counsel listened to appellant,
reviewed medical records, and decided that the defense would not be in appellant's best interest);
Donnell v. State, 148 S.W.3d 674, 676 (Tex. App. - Beaumont 2004, no pet.) (finding counsel not
ineffective for failing to pursue insanity when appellant's testimony reflected that he was able to
communicate clearly about his behavior and rationalizations for that behavior).

 Even if we were to conclude that counsel's performance was deficient, we do not find a
reasonable probability that the trial would have produced a different result. When insanity is alleged,
the focus is on the mental state of the defendant at the time the crime is committed. See Tex. Penal
Code Ann. § 8.01(a) (Vernon 2003); Nelson v. State, 149 S.W.3d 206, 211-12 (Tex. App. - Fort
Worth 2004, no pet.). Mere evidence of a mental disease alone is not sufficient to establish legal
insanity unless the defendant was mentally ill to the point that he did not know his conduct was
wrong. Plough v. State, 725 S.W.2d 494, 500 (Tex. App. - Corpus Christi 1987, no pet.). Here,
Appellant has pointed to nothing in the record that establishes insanity at the time of the offense, that
is, that he did not know his conduct was wrong when he killed the victim. Rather, he simply points
to his prior suicide attempt, the destructive incident in jail, his alleged irrational and illogical
pleadings, and his blackout as alleged in the confession. However, his actions while in jail and his
alleged illogical pleadings, at most, demonstrate Appellant's mental problems in general; they do
not establish his mental state at the time of the killing. Similarly, his blackout during the fight does
not establish insanity, and nothing in the record suggests that he did not know, at the time he began
hitting Andrade, that his conduct was wrong. See Nutter v. State, 93 S.W.3d 130, 132 (Tex. App.
- Houston [14th Dist.] 2001, no pet.) (finding that although appellant had a history of extensive
psychological problems, that evidence alone was insufficient to establish legal insanity at the time
of the offense). Finding no evidence that Appellant was insane at the time of the offense, counsel's
failure to pursue such a defense at an earlier time did not prejudice the defense. See Brown v. State,
129 S.W.3d 762, 767 (Tex. App. - Houston [1st Dist.] 2004, no pet.); Conrad v. State, 77 S.W.3d
424, 426-27 (Tex. App. - Fort Worth 2002, pet. ref'd) (cases holding counsel's failure to pursue an
insanity defense did not prejudice the defense when despite history of mental illness, there was no
evidence showing appellant's insanity at the time of the offense). Accordingly, we reject Appellant's
claim of ineffective assistance of counsel in this regard.Sudden-Passion Instruction

 Appellant also faults counsel for failing to request a sudden-passion instruction. At trial,
counsel focused on self-defense and such an instruction was included in the court's charge. That
same evidence, according to Appellant, also raised sudden passion. However, at punishment,
counsel did not request an instruction on sudden passion.

 Assuming arguendo that the trial evidence arguably raised the issue of sudden passion, we
note that the record is silent as to counsel's reasons for not requesting a sudden-passion charge. 
Unlike Appellant's first allegation where counsel explained his reasons for not filing a notice of
intent to seek insanity sooner, here, counsel has simply not been provided an opportunity to explain
his actions. Although Appellant filed a motion for new trial, he did not allege ineffective assistance
of counsel, and no hearing was had on the motion. To conclude that the representation by counsel
was deficient without a proper record exploring his trial strategy and rationale why he did not request
the instruction would require us to speculate as to counsel's motivation and reasoning, which we may
not do. (5) Therefore, without evidence in the record to establish both deficiency and rebut the
presumption of reasonable assistance, Appellant is unable to satisfy the first prong of Strickland in
this regard. See Rios v. State, 990 S.W.2d 382, 386 (Tex. App. - Amarillo 1999, no pet.) ("In light
of the absence of proof as to trial counsels [sic] reasons for or strategy in not requesting the sudden
passion mitigating instruction, we will not speculate on trial counsels [sic] strategy, mental
processes, or reasons for not requesting the [sudden-passion] instruction."); Ramirez v. State, No.
04-03-00733-CR, 2004 WL 2997747, at *2 (Tex. App. - San Antonio Dec. 29, 2004, pet. ref'd)
(mem. op., not designated for publication) (because record was silent as to counsel's reasons for not
requesting an instruction on sudden passion, appellant failed to show ineffective assistance of
counsel in this regard). Therefore, in light of the silent record, we decline to find counsel was
ineffective for failing to request a sudden-passion instruction.

 Having concluded that Appellant has not shown ineffective assistance of counsel on the bases
alleged, we overrule his first issue.

Prosecutor's Argument

 Appellant's second issue contends that the prosecutor engaged in improper jury argument by
stating, "I have zero respect for this Defense. I find it slimy, offensive and tricky." According to
Appellant, the comment struck at him over the shoulders of counsel. The State responds that
Appellant's complaint is not preserved for our review.

Applicable Facts

 The record reflects that when the prosecutor made the complained-of comment, Appellant
raised the following objection: "Your Honor, I'm going to object to those sidebar comments. And,
frankly, it's inappropriate on the part of counsel." The trial court sustained the objection. Appellant
then asked for a limiting instruction and an admonishment to the prosecutor "that she knows she's
out of line." The trial court instructed the jury to disregard the prosecutor's comment. Appellant
did not then move for a mistrial. However, the following day, after the jury found Appellant guilty
and the State's first punishment witness finished testifying, Appellant moved for a mistrial on
grounds that the prosecutor's closing argument during guilt-innocence was "so highly prejudicial that
we don't believe we can get a fair trial." The trial court believed the mistrial motion was untimely
but ruled anyway, denying the motion.

Preservation of Error

 To preserve error regarding improper jury argument, a defendant ordinarily should (1)
contemporaneously object to the statement; (2) request an instruction that the jury disregard the
statement if the objection is sustained; and (3) move for a mistrial if the instruction is granted. 
Cooks v. State, 844 S.W.2d 697, 727-28 (Tex. Crim. App. 1992). However, this sequence is not
essential to preserve complaints for appellate review; rather, the essential requirement is a timely,
specific request that the trial court refuses. Young v. State, 137 S.W.3d 65, 69 (Tex. Crim. App.
2004). When the trial court sustains an objection, instructs the jury to disregard, and denies the
mistrial, the issue on appeal is whether the trial court abused its discretion by denying the motion
for mistrial. Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004). Moreover, the
appellate complaint challenging the motion for mistrial must comport with the motion made at trial. 
Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); Rivera v. State, No. 08-05-00339-CR, 2007 WL 766129, at *2 (Tex. App. - El Paso Mar. 15, 2007, no pet.) (op., not designated for
publication). And the mistrial motion must be timely, that is, it must be made as soon as the grounds
for the mistrial becomes apparent. Griggs v. State, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). 

 Here, the trial court sustained Appellant's objection to the prosecutor's closing argument. 
Therefore, the only adverse ruling from which Appellant can appeal is the denial of his motion for
mistrial. Hawkins, 135 S.W.3d at 76-77. Appellant moved for a mistrial on grounds that the
prosecutor's closing argument was "so highly prejudicial that we don't believe we can get a fair
trial." The State asserts that such an objection is too general and does not comport with Appellant's
specific complaint on appeal. However, a general objection can be sufficient to preserve error when
the record shows the trial court understood the nature of the objection. See, e.g., Everett v. State, 707
S.W.2d 638, 641 (Tex. Crim. App. 1986) (holding objection on grounds that an argument was
"improper" sufficiently preserved error based on prosecutor's argument, coupled with defense
counsel's objection, which informed the court of the type of error, and trial court admonished
prosecutor after overruling defense counsel's objection); Davila v. State, 952 S.W.2d 872, 878 (Tex.
App. - Corpus Christi 1997, pet. ref'd) (holding "improper argument" objection was general, but
error preserved because court admonished prosecutor before denying mistrial); Martinez v. State, 833
S.W.2d 188, 192 (Tex. App. - Dallas 1992, pet. ref'd) (holding "improper" and "inflammatory"
objection to jury argument was general but sufficient to preserve error under circumstances because
trial judge and prosecutor were aware of substance of objection as court instructed jury to remember
testimony as they heard it). Here, Appellant's "sidebar" objection, coupled with his request that the
prosecutor be admonished and motion for mistrial, pointing out the inappropriate comment and
alleging it was highly prejudicial, was sufficient to put the trial court on notice that Appellant was
asserting that the prosecutor struck at him over the shoulders of counsel. Therefore, we believe that
Appellant's objection at trial comports with his complaint on appeal.

 Nevertheless, we note that Appellant did not move for a mistrial until after the State's first
punishment witness testified. It was clear that the grounds for a mistrial was apparent when
Appellant first made his objection and moved for an instruction to disregard. Waiting until after the
State's first punishment witness testified is simply too late to move for a mistrial concerning an
improper closing argument at guilt-innocence. Therefore, we find that the motion for mistrial was
untimely and nothing is preserved for our review. See Griggs, 213 S.W.3d at 927 (mistrial stemming
from witness's testimony was untimely made when appellant did not move for mistrial until after
witness concluded his testimony and another witnesses testified); Fenoglio v. State, 252 S.W.3d 468,
476 (Tex. App. - Fort Worth 2008, pet. ref'd) (mistrial stemming from seating an unqualified juror
not timely when made two months later).

 Appellant, citing Romo v. State, 631 S.W.2d 504, 505 (Tex. Crim. App. 1982), seems to
assert that the argument was so prejudicial that an objection or timely motion for mistrial was not
necessary. However, the Court of Criminal Appeals expressly overruled Romo and its progeny
fourteen years ago in Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996), cert. denied, 520
U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997). There the Court stated that "[b]efore a
defendant will be permitted to complain on appeal about an erroneous jury argument or that an
instruction to disregard could not have cured an erroneous jury argument, he will have to show he
objected and pursued his objection to an adverse ruling." Cockrell, 933 S.W.2d at 89. Therefore,
Appellant was required to timely raise his appellate complaint to the trial court before we may
address it. Because he did not, any error is not preserved. See Griggs, 213 S.W.3d at 927. 
Accordingly, Appellant's second issue is overruled.Attorney-Client Privilege

 Appellant's third issue contends that the trial court violated the attorney-client privilege by
admitting a phone call recording between Appellant and his stepmother, Judy McDonald, which
contained an "allegation that defense counsel stated that the decedent deserved killing." According
to Appellant, because he appointed Judy, a non-licensed attorney, to act on his behalf under a durable
power of attorney, and because she was working on behalf of his trial counsel, any communications
between them were privileged. We disagree.

Rule 503

 Rule 503 provides that a "client has a privilege to refuse to disclose and to prevent any other
person from disclosing confidential communications made for the purpose of facilitating the
rendition of professional legal services to the client: (A) between the client or a representative of
the client and the client's lawyer or a representative of the lawyer; (B) between the lawyer and the
lawyer's representative; (C) by the client or a representative of the client, or the client's lawyer or
a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party
in a pending action and concerning a matter of common interest therein; (D) between representatives
of the client or between the client and a representative of the client; or (E) among lawyers and their
representatives representing the same client." Tex. R. Evid. 503(b)(1). In criminal cases, the
privilege prevents the lawyer or the lawyer's representative from disclosing any facts that come to
light from the lawyer or the lawyer's representative by reasons of the attorney-client relationship. 
Id. at 503(b)(2). A "lawyer" is a person authorized, or reasonably believed by the client to be
authorized, to engage in the practice of law in any state or nation, whereas a "representative of the
lawyer" is either one employed by the lawyer to assist the lawyer in the rendition of professional
legal services or an accountant who is reasonably necessary for the lawyer's rendition of professional
legal services. Id. at 503(a)(3), (4).

Application

 We first address Appellant's assertion that Judy, being appointed by durable power of
attorney, was acting on his behalf, that is, as his attorney, in his criminal prosecution. A durable
power of attorney simply designates another as the principal's "attorney in fact," meaning one
designated to transact business for another. See Black's Law Dictionary 124 (7th ed., West 1999). 
A power of attorney does not authorize one to act as a licensed attorney at law, representing
individuals in proceedings in court. Harkins v. Murphy & Bolanz, 51 Tex. Civ. App. 568, 112 S.W.
136, 138 (Dallas 1908, writ dism'd). Nor does it confer authority on individuals to act as counsel
in a criminal prosecution. See Elwell v. Mayfield, No. 10-04-00322-CV, 2005 WL 1907126, at *3
(Tex. App. - Waco Aug. 10, 2005, pet. denied) (mem. op., not designated for publication).

 Here, the durable power of attorney executed by Appellant only appointed Judy to act as
Appellant's agent in civil matters, limited to transactions involving real estate, tangible personal
property, stocks and bonds, commodities and options, banking, business operations, insurance and
annuities, estate, trust, and other beneficiary transactions, claims and litigations, personal and family
maintenance, benefits from social security, Medicare, Medicaid, or other civil or military service
government programs, retirement plans, and tax matters. Nothing in the executed document
provided that Judy was to act as Appellant's attorney on his behalf in criminal cases. This comports
with the proposition that the constitutional and statutory right to counsel in criminal prosecutions
is limited to licensed counsel. See Coyle v. State, 775 S.W.2d 843, 846 (Tex. App. - Dallas 1989,
no pet.) (citing Harkins, 112 S.W. at 138). Thus, we cannot conclude that Appellant's appointment
of Judy to act on his behalf with power of attorney extended to his criminal prosecution. See Elwell,
2005 WL 1907126, at *3 (holding that granting an individual power of attorney under the Durable
Power of Attorney Act did not confer authority on individual to act as counsel in a criminal
prosecution). Because Judy was not a licensed attorney and could not act on Appellant's behalf in
his criminal prosecution simply because she was appointed to act as his agent under a durable power
of attorney, Appellant may not invoke the attorney-client privilege to exclude the phone-call
recording. See Strong v. State, 773 S.W.2d 543, 549 (Tex. Crim. App. 1989) (to invoke the attorney-client privilege under Rule 503(a)(3)'s definition of "lawyer," appellant must have consulted with
a licensed attorney).

 Appellant also contends that Judy was acting on behalf of his counsel. As previously noted,
the attorney-client privilege can be invoked to prevent the lawyer's representative from disclosing
facts that come to light by means of the attorney-client relationship. Tex. R. Evid. 503(b)(2). As
applicable in this case, a "representative of the lawyer" means one employed by the lawyer to assist
the lawyer in the rendition of professional legal services. Id. at 503(a)(4). However, nothing in the
record establishes that Appellant's counsel employed Judy to assist him in the rendition of any legal
services related to the criminal prosecution. In fact, Appellant's counsel expressly represented to
the trial court that Judy was working against his attorneys. Accordingly, Judy was not a
representative of Appellant's counsel, and therefore, the attorney-client privilege did not extend to
her telephone conversations with Appellant. See Tex. R. Evid. 503(a)(4), (b)(2); cf. Burnett v. State,
642 S.W.2d 765, 769 (Tex. Crim. App. 1983) (attorney-client privilege extended to hypnotist hired
by defendant's attorneys).

 Having concluded that the attorney-client privilege was inapplicable to the telephone
conversation, the trial court did not abuse its discretion by admitting the recording. As such,
Appellant's third issue is overruled.

CONCLUSION

 Having overruled Appellant's issues, we affirm the trial court's judgment.



 

 GUADALUPE RIVERA, Justice

September 30, 2010


Before Chew, C.J., McClure, and Rivera, JJ.


(Do Not Publish)
1. Despite Appellant's allegation, records from Time Warner Cable established that internet service was not
installed at Andrade's home until June 4, 2005.
2. Article 46C.051(b) of the Code of Criminal Procedure requires notice of an insanity defense to be filed at
least twenty days before the date the case is set for trial. Tex. Code Crim. Proc. Ann. art. 46C.051(b) (Vernon
2006). However, that provision did not go into effect until September 1, 2005. Id. Thus, counsel filed the motion
under the prior statute, which only required ten days notice. See former Tex. Code Crim. Proc. Ann. art. 46.03 §
2(a) (repealed by Acts 2005, 79th Leg., ch. 831, § 1). Nevertheless, Appellant refers us to article 46C.051 on
appeal, and given his argument that counsel untimely filed his notice to pursue an insanity defense, we assume
Appellant is requesting our evaluation of counsel's effectiveness to commence under article 46C.051. Regardless of
whether the current or former statute applies, our discussion below demonstrates that there was no evidence of
insanity such that counsel could be rendered ineffective for failing to allege the defense sooner than he did.
3. Appellant alleged in his confession that after they fell to the ground, he must have blacked out because he
could not recall what happened.
4. Although the trial court denied Appellant's motion to suppress the written statement, the statement was
not admitted at trial.
5. We agree with the State's speculation that counsel may have reasonably believed that if the jury rejected
Appellant's claim of self-defense, they would also reject any claim of sudden passion, which was based on the same
facts, and therefore, counsel's decision not to request a sudden-passion instruction had a plausible basis. See Chavez
v. State, 6 S.W.3d 56, 65 (Tex. App. - San Antonio 1999, pet. ref'd); Ervin v. State, No. 01-08-00207-CR, 2008 WL
5263635, at *7 (Tex. App. - Houston [1st Dist.] Dec. 18, 2008, pet. ref'd) (mem. op., not designated for publication)
(cases finding counsel's decision not to request a sudden-passion instruction did not fall below an objective standard
of reasonableness where counsel may have believed that if the jury rejected appellant's claim of self-defense, they
would also reject any claim of sudden passion based on the same facts).